# IN THE SUPREME COURT OF TENNESSEE
## AT NASHVILLE
### February 11, 2010 Session

## TERRANCE LAVAR DAVIS v. STATE OF TENNESSEE

**Appeal by Permission from the Court of Criminal Appeals**

**Circuit Court for Hickman County**
**No. 07-5033C      Timothy Easter, Judge**

---

**No. M2009-00011-SC-R11-HC - FILED MAY 7, 2010**

---

We granted permission to appeal in this habeas corpus case to address the legality of a plea-bargained sentence requiring the defendant, being sentenced for two cocaine offenses committed in a school zone, to serve twenty-two years of a Range I sentence at "100%." The defendant alleges that his sentence is illegal because it makes no provision for the possibility of early release on parole. The trial court denied relief. On appeal, the Court of Criminal Appeals reversed the trial court and remanded for further proceedings. We hold that the defendant's sentence is not illegal, and he is therefore not entitled to habeas corpus relief. We reverse the judgment of the Court of Criminal Appeals.

### Tenn. R. App. P. 11; Judgment of the
### Court of Criminal Appeals Reversed

CORNELIA A. CLARK, J., delivered the opinion of the Court, in which WILLIAM C. KOCH, JR., and SHARON G. LEE, JJ., joined. SHARON G. LEE, J., filed a concurring opinion. GARY R. WADE, J., filed an opinion concurring separately, in which JANICE M. HOLDER, C.J., joined.

Robert E. Cooper, Jr., Attorney General & Reporter; Michael E. Moore, Solicitor General; and Mark A. Fulks, Senior Counsel, for the appellant, the State of Tennessee.

Jay Norman, Nashville, Tennessee, for the appellee, Terrance Lavar Davis.

# OPINION

## Factual and Procedural Background

The defendant Terrance Lavar Davis ("Defendant") was charged with (1) felonious possession of over twenty-six grams of cocaine in a school zone; (2) possession of a firearm by a convicted felon; (3) delivery of .5 grams or more of cocaine in a school zone; and (4) delivery of .5 grams or more of cocaine.[1] Defendant pleaded guilty to the first and third of these charges and was sentenced to concurrent sentences of twenty-two years;[2] the remaining two counts were dismissed. In conjunction with entering his pleas, Defendant signed two petitions to enter a plea of guilty in which he acknowledged that he was subject to being sentenced as a Range II offender. Pursuant to his plea agreement, however, Defendant was actually sentenced as a Range I offender. Each of the petitions to enter a plea of guilty bears the notation "(EFFECTIVE SENTENCE 22 YRS @ 100%)." Further, each of the two judgments of conviction bears the notation "100%" entered by hand in the same line indicating that Defendant was sentenced to incarceration in the Tennessee Department of Correction ("TDOC").

Although the transcript of the plea hearing is not in the record,[3] we have gleaned some additional background from the Court of Criminal Appeals' opinion denying the petition for post-conviction relief Defendant filed after entering his pleas. See Davis v. State, No. M2005-01902-CCA-R3-PC, 2006 WL 3290822 (Tenn. Crim. App. Nov. 13, 2006). During the post-conviction hearing, Defendant "admitted that when he entered his pleas the trial judge told him his sentence was twenty-two years at 100%." Id. at *2. Defendant's counsel also testified at the hearing and stated that "he told [Defendant] he would have to serve 100% of his sentence." Id. Following the hearing, "the post-conviction court found that [Defendant] was informed by counsel and the [trial] court that he was receiving a sentence of twenty-two years that must be served at 100%." Id. at *5. The post-conviction court also "noted that [Defendant] had above average intellect, was familiar with criminal proceedings, was represented by a competent attorney, was aware of the charges against him and the potential penalties, and avoided federal prosecution[,] and received concurrent sentences as

---

[1] The indictments are not included in the record. We base our recitation of the charges brought against Defendant on the copies of two petitions to enter a plea of guilty included in the record.

[2] The twenty-two-year sentences are concurrent to each other and to a previous sentence Defendant was serving.

[3] As the appealing party before this Court, the State had the duty to prepare the record so as to convey a fair, accurate, and complete account of what occurred below with respect to the issues forming the basis of its appeal. State v. Taylor, 992 S.W.2d 941, 944 (Tenn. 1999); Tenn. R. App. P. 24(b). Although this is a habeas corpus proceeding, we may consider "the record of the proceedings upon which the judgment was rendered." Smith v. Lewis, 202 S.W.3d 124, 128 (Tenn. 2006).

a result of his pleas." Id. The trial court denied post-conviction relief and the Court of Criminal Appeals affirmed. Id. at *6.

Following his unsuccessful effort to obtain post-conviction relief, Defendant filed a petition for writ of habeas corpus on May 9, 2007. Defendant admits in his petition that, pursuant to his plea agreement, "his sentences are to be served with a release eligibility set at one hundred percent," but contends that a 100% release eligibility renders his judgments and sentences void and illegal. The trial court denied relief, but the Court of Criminal Appeals determined that Defendant's sentences are illegal and remanded. Davis v. State, No. M2007-01729-CCA-R3-HC, 2008 WL 1958174, at *3 (Tenn. Crim. App. May 6, 2008). This Court granted the State's application for permission to appeal and remanded the matter to the Court of Criminal Appeals for reconsideration in light of our decision in Edwards v. State, 269 S.W.3d 915 (Tenn. 2008). Davis v. State, No. M2007-01729-SC-R11-HC (Tenn. Jan. 5, 2009). Following remand and reconsideration, the Court of Criminal Appeals again reversed the trial court and remanded. Davis v. State, No. M2009-00011-CCA-RM-HC, 2009 WL 961777, at *4 (Tenn. Crim. App. April 8, 2009). We granted the State's application for permission to appeal.

## STANDARD OF REVIEW

Whether to grant relief upon review of a petition for habeas corpus is a question of law. Hart v. State, 21 S.W.3d 901, 903 (Tenn. 2000). Accordingly, our review is de novo with no presumption of correctness given to the conclusions of the court below. Hogan v. Mills, 168 S.W.3d 753, 755 (Tenn. 2005).

## ANALYSIS

This case requires us once again to examine a particular sentence and determine whether it is beyond a trial court's jurisdiction to impose and therefore requires us to grant habeas corpus relief. A brief review of our statutory sentencing scheme and the principles of habeas corpus jurisprudence as applied to sentences is helpful to our analysis.

### I. Statutory Sentencing Scheme

#### A. Range Classification

Under the Criminal Sentencing Reform Act of 1989, Tenn. Code Ann. §§ 40-35-101 to -505 (2006 & Supp. 2009), a trial court's first obligation in imposing sentence is to "determine the appropriate range of sentence." Id. § 40-35-210(a). Two alternatives exist for determining a defendant's appropriate range of sentence. One alternative requires the trial court to make findings of fact about how many prior felony convictions the defendant has and to determine the felony classes to which those prior convictions belong. See id. §§

3

40-35-105 to -109. On that basis, the trial court determines that the defendant is either a standard Range I offender, id. § 40-35-105; a multiple Range II offender, id. § 40-35-106; a persistent Range III offender, id. § 40-35-107; a career Range III maximum offender, id. § 40-35-108; or an especially mitigated Range I reduced offender, id. § 40-35-109. The other alternative allows the defendant and the State to negotiate a plea bargain that includes a range classification.[4] Thus, as in the present case, a defendant who would otherwise be classified as a multiple Range II offender may negotiate a plea bargain which includes a standard Range I offender classification instead.

The classification of a defendant for sentencing range purposes is significant because the higher ranges carry longer sentence terms. For instance, the Range I sentence for a Class A felony is fifteen to twenty-five years. Tenn. Code Ann. § 40-35-112(a)(1). The Range II sentence for a Class A felony is twenty-five to forty years. Id. at (b)(1). The Range III sentence for a Class A felony is forty to sixty years. Id. at (c)(1). It therefore benefits defendants to seek the lowest possible range classification, either through contesting the State's proof about prior convictions or through plea negotiations.

Once the appropriate range is determined, and after considering any mitigating and enhancement factors that apply, the trial court imposes a specific term of years within that range. Id. § 40-35-210(c). Alternatively, a plea bargain may include both a range classification and an agreed-upon term of years. The trial court (or plea bargaining parties) must also determine (1) the manner in which the defendant will serve his or her sentence, for example, incarcerated in the TDOC or on probation, id. at (b), and (2) if the defendant is being sentenced for more than one conviction (or is currently serving another sentence), whether the terms imposed for each conviction are to be served concurrently or consecutively, id. § 40-35-115.

### B. Early Release

### 1. Parole

The sentencing range is important for another reason. For most felonies, a defendant ordered to serve his or her sentence incarcerated in the TDOC becomes eligible for early

---

[4] We have previously observed that "the 1989 [Sentencing] Act contemplates that its provisions will govern plea bargain agreements" and "permits a court to impose a plea bargain sentence without a specific sentencing hearing or presentence report." McConnell v. State, 12 S.W.3d 795, 799 n.7 (Tenn. 2000) (citing Tenn. Code Ann. §§ 40-35-203(b), -205(d) (1997)). Of course, all plea bargains are subject to the trial court's review and acceptance or rejection. See Tenn. R. Crim. P. 11(c)(3).

4

release on parole[5] upon reaching his or her "release eligibility date" ("RED"). Id. § 40-35-501(a)(1). A defendant's RED is expressed as a percentage of his or her sentence and is generally determined by reference to the defendant's sentencing range classification. Thus, "[r]elease eligibility for each defendant sentenced as a Range I standard offender *shall occur* after service of thirty percent (30%) of the actual sentence imposed less sentence credits earned and retained by the defendant." Id. at (c) (emphasis added). And, "[r]elease eligibility for each defendant sentenced as a Range II multiple offender *shall occur* after service of thirty-five percent (35%) of the actual sentence imposed less sentence credits earned and retained by the defendant." Id. at (d) (emphasis added). The RED is based on service of a progressively greater percentage of the defendant's sentence as his or her sentencing range increases. A defendant's RED is indicated on his or her uniform judgment document by checking a box labeled, e.g., "Mitigated 20%," "Standard 30%," or "Multiple 35%." As is clear from the term "shall occur" in section -501, felony inmates are generally entitled to be considered for parole after a date certain.[6]

As with most general rules, however, there are exceptions. For instance, our legislature has specified that, for a few enumerated violent offenses, "[t]here shall be no release eligibility." Id. at (i)(1). That is, defendants convicted of these particular violent offenses are not eligible for early release on parole.[7] These violent offenses include first and second degree murder; especially aggravated and aggravated kidnapping; especially aggravated robbery; aggravated rape and rape; aggravated sexual battery; rape of a child and aggravated rape of a child; aggravated arson; aggravated child abuse; and certain offenses involving the sexual exploitation of a minor. Id. at (i)(2).[8] On the uniform judgment document completed for each conviction offense, release eligibility for most of these offenses[9] is indicated by a box labeled "Violent 100%."

---

[5] A defendant's *eligibility* for early release on parole is no guarantee that he or she will be granted parole. See Hopkins v. Tenn. Bd. of Paroles & Prob., 60 S.W.3d 79, 82 (Tenn. Ct. App. 2001). Parole is a privilege, not a right. Tenn. Code Ann. § 40-35-503(b); State v. Turner, 297 S.W.3d 155, 162 (Tenn. 2009). A release eligibility date simply, and merely, provides a date after which a defendant is entitled to be *considered* for early release on parole. The Board of Probation and Parole makes the decision whether to grant parole. Tenn. Code Ann. § 40-28-118(a) (2006).

[6] A defendant's RED "is conditioned on the inmate's good behavior while in prison" and may be deferred by the TDOC for infractions of institutional rules. Tenn. Code Ann. § 40-35-501(m).

[7] This provision applies to defendants who have committed these offenses on or after July 1, 1995. Tenn. Code Ann. § 40-35-501(i)(1).

[8] Additionally, release eligibility is limited for certain offenses committed while the defendant is in possession of a firearm, Tenn. Code Ann. § 40-35-501(j), and for certain defendants convicted of aggravated robbery, id. at (k)(1).

[9] For reasons set forth below, there are separate boxes for multiple rapists and child rapists.

5

Significantly to this case, a defendant's RED may also be determined by plea bargain. As we observed in McConnell v. State, "the legislature's failure to limit the use of offender classification and release eligibility as plea bargaining tools evinced the legislature's intent to permit the practice." 12 S.W.3d 795, 798 (Tenn. 2000) (citing Hicks v. State, 945 S.W.2d 706, 709 (Tenn. 1997)). And, this Court has made clear that a defendant may plea bargain for a RED that is inconsistent with the sentencing range agreed to. Hicks, 945 S.W.2d at 706. Thus, a defendant may agree to a "hybrid" sentence which combines, for instance, a Range I offender classification with a Range II RED. Id.

## 2. Sentence Reduction Credits

In addition to the possibility of early release on parole, most felony offenders sentenced to serve their sentences incarcerated in the TDOC have the opportunity to obtain sentence reductions based on sentence credits earned for, e.g., "good institutional behavior." See generally Tenn. Code Ann. § 41-21-236 (2006 & Supp. 2009). Sentence reduction credits operate distinctly from eligibility for parole. Sentence reduction credits actually *reduce* a defendant's sentence such that his or her term of imprisonment expires earlier than it would without the credits. Sentence reduction credits may also hasten a defendant's RED. See id. at (b) ("The allowances which can be awarded pursuant to this section shall be referred to as inmate sentence reduction credits and shall affect release eligibility and sentence expiration dates in the same manner as time credits affected parole eligibility and sentence expiration dates prior to September 1, 1980."). Parole, on the other hand, allows a defendant to continue serving his sentence outside the walls of the prison; parole does not actually reduce the parolee's sentence.

Defendants serving sentences for most of the statutorily-enumerated violent offenses listed above are eligible to earn sentence reduction credits, although they are limited to thereby reducing their sentence by no more than 15%. Id. § 40-35-501(i)(1). However, our General Assembly has designated a few offenses for which neither parole nor sentence reduction credits are available. Persons meeting the definition of "child sexual predator," "multiple rapist," or "child rapist" are not eligible for early release on the basis of either parole or sentence reduction credits. Id. § 39-13-523(b), (c) (Supp. 2009); see also id. § 40-35-501(i)(3). These defendants must serve their entire sentences. The uniform judgment document designates these sentences by boxes labeled "Child Rapist 100%" and "Multiple Rapist 100%," respectively. Our legislature has also provided that a defendant determined to be a "repeat violent offender" shall, upon conviction of any of certain enumerated offenses, be sentenced "to imprisonment for life without possibility of parole." Id. § 40-35-120(g). The uniform judgment document designates these sentences by a box labeled

"Repeat Violent 100%."[10]  Repeat violent offenders sentenced to life without the possibility of parole are, obviously, not entitled to a RED or early sentence expiration on the basis of sentence reduction credits.[11]

## B. Sentencing and Habeas Corpus

Article I, section 15 of the Tennessee Constitution guarantees that "the privilege of the writ of Habeas Corpus shall not be suspended, unless when in case of rebellion or invasion, the General Assembly shall declare the public safety requires it."  While arising from the constitution, the writ has nevertheless been regulated by statute for more than 150 years.  Ussery v. Avery, 432 S.W.2d 656, 657 (Tenn. 1968).  The statute applicable at the time Defendant filed his habeas corpus petition provides that "[a]ny person imprisoned or restrained of liberty, under any pretense whatsoever, except in cases [in which federal courts have exclusive jurisdiction], may prosecute a writ of habeas corpus, to inquire into the cause of such imprisonment and restraint."  Tenn. Code Ann. § 29-21-101 (2000).

In spite of the statute's broad language, "the grounds upon which habeas corpus relief will be granted are narrow."  Hickman v. State, 153 S.W.3d 16, 20 (Tenn. 2004) (citing Dixon v. Holland, 70 S.W.3d 33, 36 (Tenn. 2002)).  Specifically, this Court has held that the writ may be granted "only when it appears upon the face of the judgment or the record of the proceedings upon which the judgment is rendered that *a court lacked jurisdiction or authority to sentence a defendant*[12] or that the sentence has expired."  Stephenson v. Carlton, 28 S.W.3d 910, 911 (Tenn. 2000) (citing Archer v. State, 851 S.W.2d 157, 164 (Tenn. 1993)) (emphasis and footnote added); see also State v. Galloway, 45 Tenn. (5 Cold.) 326, 336-37 (1868).  It is well-settled "that a petition for writ of habeas corpus may not be used to review or correct errors of law or fact committed by a court in the exercise of its jurisdiction."  State ex rel. Holbrook v. Bomar, 364 S.W.2d 887, 888 (Tenn. 1963). Furthermore, "the writ of habeas corpus cannot be used to serve the purpose of an appeal or writ of error."  Id.

With respect to sentencing, we have recognized that "[s]entencing is jurisdictional and must be executed in compliance with the [applicable Sentencing] Act."  McConnell, 12

---

[10] The designation "100%" for violent offenders, child rapists, multiple rapists, and repeat violent offenders refers to the defendant's RED.  A "100%" RED indicates that the defendant is not eligible for early release on parole.

[11] Defendants with no previous criminal history who are convicted of first degree murder may also be sentenced to life imprisonment without the possibility of parole, Tenn. Code Ann. § 39-13-204(a) (2006 & Supp. 2009), for which there is no release eligibility, id. § 40-35-501(h)(2).

[12] In habeas corpus proceedings, we construe the term "jurisdiction" as synonymous with the term "authority."  See Lynch v. State ex rel. Killebrew, 166 S.W.2d 397, 398-99 (Tenn. 1942).

S.W.3d at 798. Thus, a trial court lacks the jurisdiction or authority to impose on a defendant a sentence that (1) is not *authorized* by the applicable statutes, see, e.g., May v. Carlton, 245 S.W.3d 340, 348-49 (Tenn. 2008) (granting habeas corpus relief to convicted felon declared infamous for a crime not listed as infamous under the statute); Stephenson, 28 S.W.3d at 912 (holding habeas corpus attack proper where defendant's sentence of life without parole was not statutorily authorized and was therefore illegal), or (2) *directly contravenes* an applicable statute, see, e.g., Smith v. Lewis, 202 S.W.3d 124, 127-28 (Tenn. 2006) (holding sentence illegal because it provided for a RED where the applicable statute expressly prohibited early release eligibility); State v. Burkhart, 566 S.W.2d 871, 873 (Tenn. 1978) (holding sentence imposed in direct contravention of express statutory provisions "a nullity"). This Court considers unauthorized sentences, including those that are in direct contravention of an applicable statute, to be *illegal* as opposed to merely erroneous. See Summers v. State, 212 S.W.3d 251, 256 (Tenn. 2007) (recognizing that a judgment rendered without statutory authority is void and that "[a] sentence imposed in direct contravention of a statute is void and illegal"). Habeas corpus relief may be granted on *illegal* sentences but not on those that are merely erroneous. Archer, 851 S.W.2d at 161.

Examples of illegal sentences include (1) a sentence imposed pursuant to an inapplicable statutory scheme, see McConnell, 12 S.W.3d at 796, 799-800; (2) a sentence designating a RED where a RED is specifically prohibited by statute, see Lewis, 202 S.W.3d at 127-28; (3) a sentence ordered to be served concurrently where statutorily required to be served consecutively, see Burkhart, 566 S.W.2d at 873; and (4) a sentence not authorized for the offense by any statute, see Stephenson, 28 S.W.3d at 912. In each of these cases, relief was appropriate because the trial court did not have the statutory authority (or jurisdiction) to impose the challenged sentence.

With regard to allegedly improper sentences arising from plea bargains, we have stated repeatedly that offender range classification and release eligibility are "non-jurisdictional." See, e.g., Hoover v. State, 215 S.W.3d 776, 780 (Tenn. 2007). Thus, "a knowing and voluntary guilty plea waives any irregularity as to offender classification or release eligibility." Id.; Hicks, 945 S.W.2d at 709; see also State v. Mahler, 735 S.W.2d 226, 228 (Tenn. 1987). Accordingly, the parties may agree to a "hybrid" sentence that "mixes and matches" range assignment, term of years, and release eligibility without regard to what our sentencing scheme might call for absent a plea bargain *so long as* (1) the term of years is within the overall range of years specified for the offense, see Hoover, 215 S.W.3d at 779, and (2) the RED is not less than the minimum allowable for the offense, see Lewis, 202 S.W.3d at 128. See also McConnell, 12 S.W.3d at 799 ("The 1989 [Sentencing] Act establishes the outer limits within which the State and a defendant are free to negotiate, and the courts are bound to respect those limits.").

Examples of sentences which might contain "errors" but would not entitle the defendant to habeas corpus relief include (1) a plea-bargained sentence including a range classification that is greater than would be assigned on the basis of the defendant's prior convictions, see Mahler, 735 S.W.2d at 227-28; (2) a plea-bargained sentence including a term of years that was incompatible with the range designation, see Hoover, 215 S.W.3d at 780-81; and (3) a plea-bargained sentence including a RED that was incompatible with the range designation, see Hicks, 945 S.W.2d at 706. In each of these cases, this Court held that the challenged sentence was not illegal.[13] Relief from legal sentences that contain alleged errors must be sought through an appeal as of right or through a petition for post-conviction relief.

### III. Defendant's Sentence

In this case, Defendant pleaded guilty to one count of delivering .5 grams or more of cocaine and one count of felonious possession of more than twenty-six grams of cocaine. Each of these offenses is ordinarily a Class B felony. Tenn. Code Ann. § 39-17-417(c)(1), (i)(5) (2003). When the offenses occur within 1000 feet of a school zone, however, they are Class A felonies. Id. § 39-17-432(b) (2003). Thus, Defendant pleaded guilty in this case to two Class A felonies. The authorized term of imprisonment for a Class A felony is "not less than fifteen (15) nor more than sixty (60) years." Id. § 40-35-111(b)(1) (2003).

Because he possessed and delivered cocaine in a school zone, Defendant's plea-bargained sentence was imposed pursuant to the Drug-Free School Zone Act, Tenn. Code Ann. § 39-17-432 (2003) ("the Act").[14] Similar to child rapists and multiple rapists, for

---

[13] Since Defendant filed his habeas corpus petition in this case, the General Assembly has acted to limit habeas corpus relief on plea-bargained sentences further by adding the following language to the habeas corpus statute:

> (b) Persons restrained of their liberty pursuant to a guilty plea and negotiated sentence are not entitled to the benefits of this writ on any claim that:
> (1) The petitioner received concurrent sentencing where there was a statutory requirement for consecutive sentencing;
> (2) The petitioner's sentence included a release eligibility percentage where the petitioner was not entitled to any early release; or
> (3) The petitioner's sentence included a lower release eligibility percentage than the petitioner was entitled to under statutory requirements.

Tenn. Code Ann. § 29-21-101 (Supp. 2009). This language applies to all habeas corpus petitions filed on or after June 11, 2009. Act of June 2, 2009, ch. 420, § 3, 2009 Tenn. Pub. Acts ___. We do not address the efficacy of this amendment to the habeas corpus statute in this case.

[14] We cite to the 2003 version of the statute because Defendant pleaded guilty in December 2003. The statute has since been amended to expand the drug-free zone to include preschools, child care agencies, public libraries, recreational centers, and parks. See Tenn. Code Ann. § 39-17-432(b)(1) (2006).

whom no early release on parole or from sentence reduction credits is available, the legislature has also created a specific sentencing provision precluding early release on any basis for defendants convicted of dealing drugs within a school zone. The Act provides as follows:

(a) It is the intent of this section to create Drug-Free School Zones for the purpose of providing all students in this state an environment in which they can learn without the distractions and dangers that are incident to the occurrence of drug activity in or around school facilities. The enhanced and mandatory minimum sentences required by this section for drug offenses occurring in a Drug-Free School Zone are necessary to serve as a deterrent to such unacceptable conduct.

(b) A violation of § 39-17-417 [prohibiting the manufacture, delivery, sale, or possession with intent to manufacture, deliver, or sell, a controlled substance], or a conspiracy to violate such section, that occurs on the grounds or facilities of any school or within one thousand feet (1,000') of the real property that comprises a public or private elementary school, middle school or secondary school shall be punished one (1) classification higher than is provided in § 39-17-417(b)-(i) for such violation.

(c) *Notwithstanding any other provision of law* or the sentence imposed by the court to the contrary, a defendant sentenced for a violation of subsection (b) shall be required to serve *at least* the minimum sentence for such defendant's appropriate range of sentence. Any sentence reduction credits such defendant may be eligible for or earn shall not operate to permit or allow the release of such defendant prior to full service of such minimum sentence.

(d) Notwithstanding the sentence imposed by the court,[15] the provisions of title 40, chapter 35, part 5, relative to release eligibility status and parole, shall not apply to or authorize the release of a defendant sentenced for a violation of subsection (b) prior to service of the entire minimum sentence for such defendant's appropriate range of sentence.

(e) Nothing in the provisions of title 41, chapter 1, part 5 [regarding early release for prison overcrowding] shall give either the governor or the board of probation and parole the authority to release or cause the release of a defendant sentenced for a violation of subsection (b) prior to service of the

---

[15] We recognize the legislature's desire to emphasize its intent that defendants sentenced for dealing drugs in school zones will not be released on parole prior to a certain time. Nevertheless, the TDOC is not at liberty, even pursuant to a legislative directive, to ignore a trial court's judgments. See Burkhart, 566 S.W.2d at 873 ("The [Tennessee] Department of Correction may not alter the judgment of a court, even if that judgment is illegal.").

entire minimum sentence for such defendant's appropriate range of sentence.

> (f) *Nothing in this section shall be construed as prohibiting the judge from sentencing a defendant who violated subsection (b) to any authorized term of incarceration in excess of the minimum sentence for the defendant's appropriate range of sentence. . . .*

Tenn. Code Ann. § 39-17-432 (emphases and footnote added). The precise question before us is whether Defendant's sentence is illegal because, pursuant to the Act, the trial court imposed a plea-bargained sentence requiring Defendant to serve more than the minimum number of years in his agreed-upon range at "100%."

Of course, our primary aim in construing any statute "is to ascertain and give effect to the intent and purpose of the legislature." Walker v. Sunrise Pontiac-GMC Truck, Inc., 249 S.W.3d 301, 309 (Tenn. 2008). Whenever possible, we discern legislative intent "'from the natural and ordinary meaning of the language used, without forced or subtle construction that would limit or extend the meaning of the language.'" Lipscomb v. Doe, 32 S.W.3d 840, 844 (Tenn. 2000) (quoting Hawks v. City of Westmoreland, 960 S.W.2d 10, 16 (Tenn. 1997)). Accordingly, when we are faced with clear, unambiguous language, "we must apply its plain meaning in its normal and accepted use, without a forced interpretation that would limit or expand the statute's application." Eastman Chem. Co. v. Johnson, 151 S.W.3d 503, 507 (Tenn. 2004). When construing a more recent statute in conjunction with pre-existing legislation, "we presume that the legislature has knowledge of its prior enactments and is fully aware of any judicial constructions of those enactments." Hicks, 945 S.W.2d at 707.

We begin with subsection (c) of the Act, which, by its plain and unambiguous language, requires a defendant being sentenced for committing a drug offense in a school zone "to serve at least the minimum sentence for the defendant's appropriate range of sentence." As explained above, a defendant's "appropriate range of sentence" is determined in one of two ways: by the trial court upon proof of the defendant's prior convictions, or by plea bargain. The final sentence of subsection (c) makes clear that a defendant sentenced under the Act is not eligible for early release on the basis of sentence reduction credits before "full service" of the minimum sentence in his or her range.

Subsection (d) provides plainly and unambiguously that the minimum sentence must also be served with no eligibility for early release on parole. Accordingly, a defendant sentenced under the Act to the minimum term in his or her range will have a RED of 100%. Subsection (e) provides plainly and unambiguously that the minimum sentence must also be served before a defendant can be released in order to relieve prison overcrowding. In sum, a defendant being sentenced for committing a cocaine offense in a school zone will serve *at least* the minimum sentence in his or her range in its entirey, with no prospect of eligibility

11

for early release on parole and no prospect of early release resulting from sentence reduction credits or prison overcrowding.

Significantly, the Act does *not* place a *maximum* upon the number of years that a trial court may order a defendant "to serve" for committing a drug offense within a school zone. Indeed, two specific provisions within the Act clearly contemplate that a trial court *may* order a defendant to serve *more than* the minimum sentence in his or her range. Subsection (c) refers to "*at least*" the minimum sentence, and subsection (f) plainly and unambiguously provides trial courts with the discretion to sentence defendants committing drug offenses in school zones "to *any* authorized term of incarceration *in excess of the minimum sentence* for the defendant's appropriate range of sentence." Accordingly, it is entirely permissible – and legal – for a trial court, after considering mitigating and enhancement factors, to sentence a defendant who committed a drug offense in a school zone to serve up to the *maximum* term of years in the defendant's range.

We acknowledge, however, that the final sentence of subsection (c), and the full text of subsections (d) and (e), appear to contemplate that early release *may* become available with respect to those years *in excess of the minimum* that the trial court orders the defendant to serve in prison. A comparison to another statute limiting early release is helpful in this analysis. Tennessee Code Annotated section 39-13-523(c) (2003) provides that "[t]he provisions of title 40, chapter 35, part 5, relative to release eligibility status and parole shall not apply to or authorize the release of a multiple rapist or child rapist . . . prior to service of the *entire* sentence imposed by the court." (Emphasis added).[16] This language is substantially identical to that used in subsection (d) of the Act relative to parole, with the significant exception that it refers to the *entire* sentence imposed by the court. The comparable subsection (d) of the Act refers instead to the *minimum* sentence in the defendant's appropriate range. The same difference exists with respect to sentence reduction credits, compare § 39-13-523(b) with § 39-17-432(c), and prison overcrowding, compare § 39-13-523(d) with § 39-17-432(e).[17] The clear implication of this difference in terminology is that the possibility of early release *may* be accorded to defendants who are sentenced for committing a drug offense in a school zone and who are sentenced to serve a term of years greater than the minimum in their range, but only with respect to the years in excess of the

---

[16] Section -523 has since been amended to include child sexual predators. See Tenn. Code Ann. § 39-13-523(c) (Supp. 2009). We refer to the 2003 version because it is the version most comparable to the 2003 version of the Act.

[17] See also Tenn. Code Ann. § 40-35-501(j) (requiring 100% service of the minimum mandatory sentence for certain offenses committed with a firearm, less sentence reduction credits of no more than 15%); id. at (k)(1) (requiring 100% service of sentence imposed by court for certain aggravated robberies, less sentence reduction credits of no more than 15%).

minimum term.[18]  Nothing in the Act *requires* the possibility of early release, however, regardless of the term of years imposed.

Defendant argues in his brief to this Court that "[r]elease eligibility of 60% is the maximum release eligibility permitted by statute" pursuant to Tennessee Code Annotated section 40-35-501 and that, if he is "deemed to have agreed to a release eligibility of 100%, then he has agreed to a release eligibility in excess of what is allowed or authorized by law in regard to release eligibility."  He also asserts that the "punishment provided by the legislature for [his] convicted offense does not include a provision for service of the sentence without the possibility of parole and therefore [his] sentence is void."

In light of the express statutory provisions of the Act set forth above, Defendant's argument must fail.  Contrary to his assertions, the General Assembly has declared specifically and unambiguously that defendants being sentenced for committing drug offenses in a school zone shall serve the entire minimum term of years in the defendant's sentencing range, without regard to parole eligibility or sentence reduction credits.  While we recognize that Tennessee Code Annotated section 40-35-501 states generally that "release eligibility . . . *shall* occur" (emphasis added), that directive is overridden by the subsequent language of subsection (d) of the Act[19] which declares that the release eligibility provisions of section 40-35-501 "shall not apply to or authorize the release" of defendants "prior to service of the entire minimum sentence for such defendant's appropriate range of sentence."  Accordingly, defendants sentenced as Range I offenders to fifteen years for committing a Class A drug offense in a school zone will serve their entire sentence with no possibility of early release by virtue of either parole or sentence reduction credits.  Like child rapists and multiple rapists, defendants dealing drugs in school zones who are sentenced to the minimum term in their sentencing range will serve literally 100% of their sentences.

We turn now to the actual sentence imposed on Defendant.  In this case, Defendant acknowledged that he was a multiple offender and therefore subject to a Range II sentence.  Id. § 40-35-106(c) (2003).  The Range II sentence for a Class A felony is "not less than twenty-five (25) nor more than forty (40) years."  Id. § 40-35-112(b)(1) (2003).  Defendant

---

[18] Thus, the Act allows a trial court to impose, for instance, a twenty-two-year sentence on a Range I offender for a Class A felony, of which fifteen years must be served in their entirety.  With respect to the remaining term of seven years, absent a contrary plea bargain, the appropriate RED and sentence reduction credits would apply.

[19] The Act was originally enacted in 1995, see Act of May 26, 1995, ch. 515, 1995 Tenn. Pub. Acts 918, whereas Tennessee Code Annotated section 40-35-501 was originally enacted in 1989, see Act of May 24, 1989, ch. 591, § 6, 1989 Tenn. Pub. Acts 1169, 1348.

was therefore facing a potential sentence of forty years, with a minimum sentence of twenty-five years to be served in its entirety on each count.

The two uniform judgment documents filled out for Defendant's convictions each indicate that Defendant is sentenced as a "Standard" (Range I) offender, that his release eligibility is determined by reference to the Act (because the box labeled "School Zone" is checked), that he is sentenced to the TDOC, that his sentence length is twenty-two years, and that he is to serve "100%." We construe the handwritten instruction of "100%" to mean that Defendant is sentenced to serve his entire term of twenty-two years with no eligibility for early release on parole. We reject the State's characterization of the "100%" notation as "random" and "ambiguous" and conclude, instead, that the uniform judgment documents designate clearly and correctly the sentence to which the parties had, in fact, agreed. Had the parties intended that Defendant be eligible for parole with respect to the last seven years of his twenty-two-year term, the judgment documents would not bear the handwritten "100%" designation. In that event, the remaining information on the judgment forms would have alerted the TDOC that Defendant was eligible for early release on parole some time after he had served the first fifteen years.

Defendant obtained significant concessions in exchange for his guilty plea. First, the remaining two counts against him were dismissed. Second, the State agreed that Defendant's sentences be served concurrently, whereas he otherwise faced the possibility of consecutive service. Third, Defendant avoided federal prosecution for these offenses. Finally, although he qualified as a multiple Range II offender, the State and the trial court agreed that Defendant be sentenced as a Range I offender and therefore subject to a sentencing range of only fifteen to twenty-five years. The actual term of years imposed was twenty-two years for each offense instead of the minimum twenty-five years that is applicable to Range II offenders convicted of a Class A felony. In exchange for the lower range and reduced term of years, Defendant agreed to a RED of 100%: that is, he agreed to forego any possibility of early release on parole.

We turn, finally, to the crux of this case: whether a Range II defendant being sentenced for drug offenses committed in a school zone who plea-bargains to be sentenced as a Range I offender may be ordered to serve *more* than the minimum Range I sentence, but less than the minimum Range II sentence, without the possibility of early release on parole. Certainly, nothing in the language of the Act prevents or prohibits this result. And, in the context of this habeas corpus proceeding, we reiterate that, with respect to plea-bargained sentences, release eligibility is *non-jurisdictional*. A defendant may legally bargain for a higher RED in exchange for a lower sentencing range. A defendant's bargaining power extends to the point that he or she may choose to forego entirely any entitlement to a RED. That is precisely what happened here: to avoid a minimum sentence of twenty-five years to be served in its entirety, with the possibility of a longer sentence, Defendant bargained for,

14

and received, a sentence of only twenty-two years to be served with no RED. Nothing in the Act, or elsewhere in our sentencing statutes, prohibits this result.

Nevertheless, the final sentence of subsection (c) of the Act appears to contemplate that a defendant ordered to serve more than the minimum term in his or her appropriate range is eligible for early release on the basis of sentence reduction credits applicable to that portion of the sentence in excess of the minimum. That the judgment documents designate the sentence to be served at "100%" does not preclude this result. As set forth above, several of the "100%" designations on a uniform judgment document do not preclude the accrual of sentence reduction credits. Accordingly, Defendant may inquire of the TDOC whether and how it intends to calculate any sentence reduction credits to which he may become entitled with respect to years sixteen through twenty-two of his sentence. If Defendant is not satisfied with the TDOC's response, he may file a proceeding pursuant to the Uniform Administrative Procedures Act. See Hughley v. State, 208 S.W.3d 388, 395 (Tenn. 2006) (quoting Carroll v. Raney, 868 S.W.2d 721, 723 (Tenn. Crim. App. 1993)).

Our interpretation of the Act allowing for the parties to agree on sentences that do not allow for early release on parole is consistent with our position that sentencing range classification and REDs are non-jurisdictional elements of sentencing. This interpretation allows the parties the maximum flexibility to craft a particular sentence for a particular defendant that still satisfies the overall legislative intent expressed in our sentencing scheme. For instance, in this case Defendant received a sentence that was more favorable than any sentence he would have received had he not agreed to the plea bargain and then been convicted at trial of the charged offenses. The State's ability to craft this distinct sentence enabled it to avoid the cost and uncertainty of a trial and yet ensure that Defendant spends a considerable amount of time incarcerated. Defendant's sentence does not contravene the Act or any other applicable provisions of our sentencing statutes. Further, the Act authorizes this result. Accordingly, Defendant is not entitled to habeas corpus relief.

## CONCLUSION

Defendant's plea-bargained sentence requiring him to serve twenty-two years pursuant to the Act with no possibility of early release on parole was within the trial court's jurisdiction to impose and is therefore a legal sentence. Because Defendant has failed to show that the trial court was without jurisdiction to impose the challenged sentence, or that he is presently held on an expired sentence, he is not entitled to habeas corpus relief. The judgment of the Court of Criminal Appeals is reversed. The costs of this cause are taxed to Terrance Lavar Davis and his surety, for which execution may issue if necessary.

_____
CORNELIA A. CLARK, JUSTICE

15