IN THE SUPREME COURT OF TENNESSEE
AT NASHVILLE
May 24, 2023 Session

## STATE OF TENNESSEE v. EBONY ROBINSON

**Appeal by Permission from the Court of Criminal Appeals
Criminal Court for Davidson County
No. 2020-D-1886    Mark J. Fishburn, Judge**

_____

### No. M2021-01539-SC-R11-CD

_____

In 2020, Ebony Robinson ("Defendant") pleaded guilty to vehicular homicide by intoxication, aggravated assault, resisting arrest, and driving without a license. The trial court imposed a ten-year sentence largely suspended to probation with periodic weeks of confinement for the first three years. The State appealed the sentence, arguing that a 2017 amendment to the probation eligibility statute, Tennessee Code Annotated section 40-35-303, prohibits defendants who are convicted of vehicular homicide by intoxication from receiving any form of probation. The Court of Criminal Appeals agreed with the State and reversed the trial court, ordering Defendant to serve the full sentence in confinement. The intermediate court concluded that the amended probation statute expressly prohibits probation of any kind, including periodic or split confinement, for criminal defendants convicted of vehicular homicide by intoxication. After reviewing the relevant statutes, this Court affirms the Court of Criminal Appeals and holds that the clear and precise language of the 2017 amendment to the probation eligibility statute prohibits all forms of probation for a defendant convicted of vehicular homicide by intoxication. Accordingly, we affirm the decision of the Court of Criminal Appeals.

**Tenn. R. App. P. 11 Appeal by Permission; Judgment of the Court of Criminal
Appeals Affirmed.**

ROGER A. PAGE, C.J., delivered the opinion of the court, in which SHARON G. LEE, JEFFREY S. BIVINS, HOLLY KIRBY, and SARAH K. CAMPBELL, JJ., joined.

Emma Rae Tennent, Assistant District Public Defender (on appeal); Mary Ruth Pate and Randi Hess, Assistant District Public Defenders (at hearing), for the appellant, Ebony Robinson.

Jonathan Skrmetti, Attorney General and Reporter; Andrée Sophia Blumstein, Solicitor General; Benjamin A. Ball, Senior Assistant Attorney General; Garrett D. Ward, Assistant Attorney General; Glenn R. Funk, District Attorney General; and Elaine Heard, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I. FACTUAL & PROCEDURAL BACKGROUND

On the evening of August 9, 2020, police responded to a call reporting that two minors were struck by a car in a Nashville neighborhood. The crash was captured on video. The video revealed Ebony Robinson ("Defendant") reversing her vehicle at a high rate of speed while on her cell phone. She struck two children who were riding their bikes in the apartment roadway. The children, referred to as C.M. and C.D., were both under the age of ten.[1] C.M. passed away that evening at Vanderbilt Children's Hospital. C.D. survived after sustaining injuries.

When officers arrived, Defendant admitted that she was driving the car. The investigating officer immediately noticed the smell of alcohol and asked if she had been drinking. Defendant replied that she "had a few" but later stated she "only had a sip." Defendant gave officers consent to search her car where a cup of "what smelled like tequila" was recovered in the center console. Defendant initially complied with sobriety testing but ultimately refused, became enraged, and resisted attempts to handcuff her. After officers detained her, they discovered that Defendant did not have a driver's license or insurance. Officers obtained a search warrant that revealed Defendant's blood alcohol percentage to be .08. *See* Tenn. Code Ann. § 55-10-401(a)(2) ("It is unlawful for any person to drive or to be in physical control of any automobile or other motor driven vehicle on any of the public roads and highways of the state . . . while . . . [t]he alcohol concentration in the person's blood or breath is eight-hundredths of one percent (0.08%) or more."). The toxicology report also revealed that the Defendant tested positive for a psychoactive amount of marijuana.

On November 4, 2020, a Davidson County Grand Jury indicted Defendant. She was charged with four separate counts: vehicular homicide by intoxication, aggravated assault, resisting arrest, and driving without a license. Defendant pleaded guilty to all charges without an agreement as to the sentence. Before a sentencing hearing was held, the State submitted a memorandum stating that Defendant was not eligible for probation pursuant to the probation eligibility statute, Tennessee Code Annotated section 40-35-303(a), because she had pleaded guilty to vehicular homicide by intoxication.

---

[1] It is the custom of this Court to use initials in place of the minors' full names.

At the sentencing hearing, the trial court heard testimony from Monique Archibald, a family friend of one of the victims, and Valerie Robinson, Defendant's mother. Ms. Robinson testified that she fostered Defendant then adopted her when she was three years old. Ms. Robinson explained that Defendant was quiet and never had any disciplinary issues growing up; however, she was aware that Defendant drank alcohol and used marijuana on occasion. She testified that, at the time of the hearing, Defendant was the mother of two children who were ten and six years old. Finally, Defendant gave a brief statement expressing her regret and lack of intent with respect to the crimes.

The trial court sentenced Defendant to ten years for vehicular homicide, four years for aggravated assault, six months for resisting arrest, and six months for driving without a license. The court found that while the probation eligibility statute states that criminal defendants convicted of vehicular homicide by intoxication are ineligible for probation, Defendant was eligible for split and periodic confinement. Defendant had been incarcerated while awaiting trial and sentencing. After the sentencing hearing, the trial court placed Defendant on probation for the vehicular homicide and aggravated assault offenses and ordered the sentences to run concurrently. The six-month sentences for resisting arrest and driving without a license were also ordered to run concurrently with the felony counts. The trial court further required Defendant to immediately enter the Hope Center for one year, during which time she was required to comply with all conditions of probation including drug and alcohol screens.[2] Thereafter, Defendant was required, for three years, to serve one week in jail during each child's birthday week as well as the week of Christmas. The trial court further ordered Defendant to attend and complete two Mothers Against Drunk Driving ("MADD") Victim Impact Panels per year.[3] She also lost her driving privileges for eight years.

The State timely filed a notice of appeal challenging Defendant's sentence for vehicular homicide by intoxication. It primarily argued that the trial court erred by placing Defendant on probation with periodic confinement when Defendant was not statutorily eligible for probation. Defendant responded that she was eligible for a sentence of split

---

[2] According its website, the Nashville Rescue Mission Hope Center is a "Christian Life Recovery Program that helps men and women . . . develop tools to make realistic, achievable changes that lead to a better quality of life." *Life Recovery Program*, Nashville Rescue Mission, https://perma.cc/2FG8-U3YK (last visited August 19, 2023).

[3] MADD is a multi-faceted organization that seeks to end drunk and drugged driving, and it provides resources to victims, survivors, and schools. *See generally*, MADD, https://perma.cc/5AM4-VVTE (last visited August 19, 2023). MADD also conducts research studies and publishes Court Monitoring Reports for several states, including Tennessee. *Id.* The organization advocates for victims' rights, helps victims find attorneys, and hosts victim impact panels to educate the community about the dangers of drunk and drugged driving. *Victim Impact Panels*, MADD, https://perma.cc/CHS4-SK4S (last visited August 19, 2022).

confinement, arguing that section 39-13-213(b)(2)(B) read together with section 40-35-303(a) merely disallows "full" probation.[4] The Court of Criminal Appeals agreed with the State and reversed the trial court's grant of probation and ordered execution of Defendant's sentence. *State v. Robinson*, No. M2021-01539-CCA-R3-CD, 2022 WL 4004153, at *6 (Tenn. Crim. App. Sept. 2, 2022) *perm. app. granted*, (Jan. 30, 2023). The intermediate court held that "a defendant convicted of vehicular homicide by intoxication is not eligible for release on any form of probation, whether it be periodic confinement or split confinement." *Id.* at *5.

This Court granted Defendant's ensuing application for permission to appeal to interpret and consider the interplay between Tennessee Code Annotated sections 39-13-213 and 40-35-303 and to determine whether the trial court erred in allowing a part of Defendant's sentence to be suspended to probation after a conviction of vehicular homicide by intoxication.

## II. STANDARD OF REVIEW

The issue presented for review concerns statutory construction. Statutory construction presents a question of law, and we review such questions de novo with no presumption of correctness. *Kampmeyer v. State*, 639 S.W.3d 21, 23 (Tenn. 2022) (citing *In re Kaliyah S.*, 455 S.W.3d 533, 552 (Tenn. 2015)); *State v. Dycus*, 456 S.W.3d 918, 924 (Tenn. 2015) (citing *State v. Springer*, 406 S.W.3d 526, 532-33 (Tenn. 2013)).

When engaging in statutory interpretation, "well-defined precepts" apply. *State v. Frazier*, 558 S.W.3d 145, 152 (Tenn. 2018) (quoting *Tenn. Dep't of Corr. v. Pressley*, 528 S.W.3d 506, 512 (Tenn. 2017)); *State v. Howard*, 504 S.W.3d 260, 269 (Tenn. 2016) (quoting *State v. McNack*, 356 S.W.3d 906, 908 (Tenn. 2011)). "The most basic principle of statutory construction is to ascertain and give effect to the legislative intent without unduly restricting or expanding a statute's coverage beyond its intended scope." *Howard*, 504 S.W.3d at 269 (quoting *Owens v. State*, 908 S.W.2d 923, 926 (Tenn. 1995)); *see Carter v. Bell*, 279 S.W.3d 560, 564 (Tenn. 2009) (citing *State v. Sherman*, 266 S.W.3d 395, 401 (Tenn. 2008)). In construing statutes, Tennessee law provides that courts are to avoid a construction that leads to absurd results. *Tennessean v. Metro. Gov't of Nashville*, 485 S.W.3d 857, 872 (Tenn. 2016) (citing *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 527 (Tenn. 2010)).

We look to "the language of the statute, its subject matter, the object and reach of the statute, the wrong or evil which it seeks to remedy or prevent, and the purpose sought

---

[4] Defendant reasoned that the trial court's allowing her to be placed on probation after trial and sentencing resulted in a sentence of split confinement because Defendant had been in custody since her arrest.

- 4 -

to be accomplished in its enactment." *Spires v. Simpson*, 539 S.W.3d 134, 143 (Tenn. 2017) (quoting *State v. Collins*, 166 S.W.3d 721, 726 (Tenn. 2005)). Courts seek a reasonable interpretation "in light of the purposes, objectives, and spirit of the statute based on good sound reasoning." *Beard v. Branson*, 528 S.W.3d 487, 496 (Tenn. 2017) (quoting *Scott v. Ashland Healthcare Ctr., Inc.*, 49 S.W.3d 281, 286 (Tenn. 2001)). The words in a statute "must be given their natural and ordinary meaning in the context in which they appear and in light of the statute's general purpose." *Coffee Cnty. Bd. of Educ. v. City of Tullahoma*, 574 S.W.3d 832, 839 (Tenn. 2019) (quoting *Mills v. Fulmarque, Inc.*, 360 S.W.3d 362, 368 (Tenn. 2012)).

If two statutes appear to be in conflict with one another, the more specific statute will govern over the more general statute. *State v. Welch*, 595 S.W.3d 615, 622 (Tenn. 2020). Additionally, when a newer statute's relationship with an older provision is analyzed, "we presume that the legislature has knowledge of its prior enactments and is fully aware of any judicial constructions of those enactments." *Davis v. State*, 313 S.W.3d 751, 762 (Tenn. 2010) (quoting *Hicks v. State*, 945 S.W.2d 706, 707 (Tenn. 1997)).

## III. ANALYSIS

With this standard of review and these principles of statutory interpretation in mind, we turn to the central issue of this appeal: whether the 2017 amendment to the probation eligibility statute, Tennessee Code Annotated section 40-35-303, prohibits defendants who are convicted of vehicular homicide by intoxication from receiving any form of probation despite Tennessee Code Annotated section 39-13-213 outlining a mandatory-minimum sentence for the same offense.

Defendant pleaded guilty to vehicular homicide by intoxication, a Class B felony, among other charges. As to sentencing for this offense, the vehicular homicide statute, as amended in 2015, provides in pertinent part:

> Any sentence imposed for a first violation of subdivision (a)(2) shall include a mandatory minimum sentence of forty-eight (48) consecutive hours of incarceration. The person shall not be eligible for release from confinement on probation pursuant to § 40-35-303 until the person has served the entire forty-eight-hour minimum mandatory sentence.

Tenn. Code Ann. § 39-13-213(b)(2)(B) (Supp. 2015).

Notably, as discussed above, the probation statute was amended in 2017 to provide as follows:

A defendant shall be eligible for probation under this chapter if the sentence actually imposed upon the defendant is ten (10) years or less; however, no defendant shall be eligible for probation under this chapter if convicted of a violation of § 39-13-213(a)(2) [vehicular homicide by intoxication]. . . .

Tenn. Code Ann. § 40-35-303(a) (Supp. 2017).

The intermediate court concluded that a defendant who is convicted of vehicular homicide by intoxication is not eligible for release on any form of probation. In its opinion, the court addressed two prior opinions discussing the same issue: *State v. McKinney*, in which one panel of the Court of Criminal Appeals denied the defendant any form of probation when analyzing the two statutes at issue, No. E2020-01730-CCA-R3-CD, 2022 WL 122867, at *3 (Tenn. Crim. App. Jan. 13, 2022), as well as *State v. Key*, in which a separate panel of the Court of Criminal Appeals stated that the subject statutes made such defendants ineligible for *full* probation but allowed a sentence of split confinement. *State v. Key*, No. M2019-00411-CCA-R3-CD, 2019 WL 7209603, at *6 (Tenn. Crim. App. Dec. 27, 2019).

The *McKinney* court considered the sentence of a first-time offender who was convicted of vehicular homicide by intoxication and ordered to serve his full sentence in incarceration. *McKinney*, 2022 WL 122867, at *1. The defendant argued on appeal that the trial court erred, reasoning that the subject statutes were not in conflict because the "release from confinement" language of the vehicular homicide statute should be interpreted as release on parole after the mandatory minimum sentence is served. *Id.* Thus, according to the defendant "a clear and plain reading of both statutes taken together clearly and unequivocally satisfies both statutes because a mandatory jail sentence under [the vehicular homicide by intoxication statute] of 48 hours before release 'from confinement' is required and [thus] the sentence is not one that is probation only." *Id.* The intermediate court rejected this reasoning stating that "the Legislature's intent to make a defendant convicted of vehicular homicide by intoxication ineligible for probation is clearly and unambiguously expressed in the language of the amendment to the probation statute." *Id.* at *3.

In *Key*, the defendant pleaded guilty to vehicular homicide by intoxication and vehicular assault and was also ordered to serve his eight-year sentence in confinement. *Key*, 2019 WL 7209603, at *1. The defendant appealed, arguing that the trial court erred in denying him alternative sentencing.[5] *Id.* at *3. The Court of Criminal Appeals panel

_____

[5] The trial court and intermediate court in the case before us, as well as the courts in the cases referenced herein, appear to use the term "alternative sentence" loosely and seemingly interchangeably with "split confinement" and "periodic confinement." We recognize, however, that "alternative sentence" can technically be used to describe any type of criminal punishment other than confinement. Given the specific question before us, it is important to clarify that we are today specifically addressing sentences suspended to probation, including split and periodic confinement. We expressly stop short of addressing whether the

- 6 -

ultimately disagreed, concluding that based on the record the trial court did not err in denying alternative sentencing. *Id.* at \*6. In doing so, the intermediate court noted that defendants are not eligible for "full probation due to statutorily imposed minimum jail terms which must be served before any potential release on probation . . . [t]hus, the Defendant could receive, at best, a sentence of split confinement." *Id.*

The State mentions, and we agree, that the preceding quoted language of the Court of Criminal Appeals panel in *Key* is mere dictum. In *Key*, the Court of Criminal Appeals determined that the trial court did not abuse its discretion when it denied the defendant an alternative sentence. *Key*, 2019 WL 7209603, at \*6. Therefore, the court was not required to decide what form of alternative sentencing was potentially available to the defendant, and the panel's statements concerning "full" probation and split confinement were not necessary to the decision of the case before it. *See Bellar v. Nat'l Motor Fleets, Inc.*, 450 S.W.2d 312, 313-14 (Tenn. 1970) (This Court has defined dictum as "an opinion expressed by a court upon some question of law which is not necessary to the decision of the case before it.").

Thus, the *McKinney* view is that the legislature clearly and unambiguously expressed in the 2017 amendment to the probation statute that a defendant convicted of vehicular homicide by intoxication is ineligible for probation. *See McKinney*, 2022 WL 122867, at \*3. The *McKinney* panel reasoned that the language therein does not conflict with the probation reference contained in the mandatory minimum sentence provisions of section 39-13-213(b)(2)(B) because the vehicular homicide statute indicates that any release on probation (after service of the mandatory minimum) is to be *pursuant to* section 40-35-303(a), which now precludes probation for such offenders. *See id.* Conversely, under the *Key* view, the 2017 amendment to the probation statute is interpreted to mean ineligibility for "full" probation because of the mandatory minimum sentence provision contained in section 39-13-213(b)(2)(B). *See Key*, 2019 WL 7209603, at \*6.

In the present case, the Court of Criminal Appeals rejected *Key* and adopted the *McKinney* holding, quoting the following excerpt from the *McKinney* opinion:

> [T]he Legislature's intent to make a defendant convicted of vehicular homicide by intoxication ineligible for probation is clearly and unambiguously expressed in the language of the amendment to the probation statute, which was enacted after the amendment to the vehicular homicide statute setting forth the mandatory minimum sentences for defendants convicted of vehicular homicide by intoxication. . . . [T]he language in Tennessee Code Annotated section 39-13-213(b)(2) concerning the

---

2017 amendment to the probation eligibility statute prohibits all forms of alternative sentencing in cases of a vehicular homicide by intoxication conviction.

mandatory minimum sentences required before release to probation does not directly conflict with the probation statute because of its provision that any release on probation is to be pursuant to the probation statute.

The practical effect of the amendment to the probation statute, however, is that a defendant convicted of vehicular homicide by intoxication will never be eligible for release on probation. Thus, to the extent that the two statutes cannot be reconciled, we conclude that the amendment to the probation statute repeals by implication the conflicting provisions of the vehicular homicide statute concerning probation eligibility for a defendant convicted of vehicular homicide by intoxication.

*Robinson*, 2022 WL 4004153, at *5 (quoting *McKinney*, 2022 WL 122867, at *3). The *Robinson* panel concluded that "a defendant convicted of vehicular homicide by intoxication will never be eligible for release on probation." *Robinson*, 2022 WL 4004153, at *8 (quoting *McKinney*, 2022 WL 122867, at *3). It determined that the plain meaning of the statute does not allow for any type of probation, including split confinement or periodic confinement. *Id.* While the instant panel concluded that the statutes are not in conflict with each other due to the fact that the vehicular homicide statute is to be construed "pursuant to § 40-35-303," the court stated that wherever the two statutes are not reconcilable, the doctrine of repeal by implication would take effect. *Id.*

On appeal before this Court, Defendant argues that a sentence including periodic confinement was still available to her despite the 2017 amendment to the probation statute. In support of her argument, Defendant cites to the *Key* panel's statement that the defendant was statutorily ineligible for a sentence of full probation due to the mandatory minimum jail terms but could receive, at best, a sentence of split confinement. *Key*, 2019 WL 7209603, at *6. Using *Key*, Defendant argues that the amendment to the probation statute merely precludes "full" probation as a consideration when sentencing a defendant convicted of vehicular homicide by intoxication but that other forms of alternative sentencing are still available. She asserts that we must choose between the doctrine of repeal by implication or Defendant's interpretation of the statute.

The State, on the other hand, argues that the language of the vehicular homicide statute, section 39-13-213, requires the reader to refer to the probation statute, section 40-35-303, to analyze all conditions and exclusions of probation for the crime. With section 40-35-303 indicating that a person convicted of this offense is not eligible for probation, the State submits that Defendant is simply not eligible for any form of probation. The State also reasons that the Court of Criminal Appeals did not actually rely on the doctrine of repeal by implication, but simply made mention of it. The State argues that while the Court of Criminal Appeals could use the doctrine wherever the two statutes could not be

reconciled, the court's holding was not that the entire subsection of the vehicular homicide statute was repealed by implication.

This Court must conduct our own statutory interpretation analysis to determine the appropriate application of and interplay between the vehicular homicide by intoxication statute and the probation eligibility statute. As stated above, the first precept of statutory interpretation is to establish and effectuate legislative intent. *Howard*, 504 S.W.3d at 269. Of course, we begin with the plain text of the statute, "read in context of the entire statute, without any forced or subtle construction which would extend or limit its meaning." *State v. Cauthern*, 967 S.W.2d 726, 735 (Tenn. 1998).

As we see it, the interpretation of the probation eligibility statute is straightforward. Tennessee Code Annotated section 40-35-303 outlines all conditions of probation for criminal defendants in the state. Subsection (a) specifically states that "no defendant shall be eligible for probation under this chapter if convicted of a violation of § 39-13-213," the statute criminalizing vehicular homicide by intoxication. Defendant contends that the probation statute can be read to merely prohibit "full" probation. She arrives at this conclusion by reasoning that the statute sought only to limit "full" probation but still allow for sentences of split and periodic confinement, which are entirely different types of sentences. However, such an interpretation does not comport with this Court's long-established rule of statutory interpretation. The addition of the word "full" to section 40-35-303(a) alters the plain meaning of the statute.

The General Assembly, when amending the probation statute in 2017, did not include the word "full," and we must assume that this was not an oversight. *Davis v. State*, 313 S.W.3d 751, 762 (Tenn. 2010) ("When construing a more recent statute in conjunction with pre-existing legislation, 'we presume that the legislature has knowledge of its prior enactments and is fully aware of any judicial constructions of those enactments.'" (quoting *Hicks*, 945 S.W.2d at 707)). In our view, reading the word "full" into the statute's wording, amounts to a forced construction that effectively limits the statute's reach. The probation statute, in its natural reading, states that defendants who are convicted of vehicular homicide by intoxication are prohibited from receiving any form of probation, which we conclude is intended to include probationary sentences of split or periodic confinement. This conclusion finds support in that the statutes that authorize sentences such as split or periodic confinement regard them as probationary sentences. *See* Tenn. Code Ann. §§ 40-35-306(a), -307(a) (referring to a defendant receiving probation). In other words, the language of the split and periodic confinement statutes indicates that probation is a foundational requirement for these sentences.[6] We agree, therefore, with the State that these

---

[6] We note that neither of the statutes discussed in this opinion specifically addresses a sentence to community corrections. This opinion addresses only probation and does not reach the distinct question of whether a person convicted of vehicular homicide by intoxication may receive community corrections.

alternative sentences are probationary sentences and, as a result, are disallowed under section 40-35-303(a).

We next address the probation statute's impact on section 39-13-213. The State reasons that, because the vehicular homicide statute cross-references the probation statute, the vehicular homicide statute is subject to all conditions and exclusions of the probation statute. We agree. Subsection 39-13-213(b)(2)(B), in part, states that "[t]he person shall not be eligible for release from confinement on probation *pursuant to § 40-35-303* until the person has served the entire forty-eight-hour minimum mandatory sentence." Tenn. Code Ann. § 39-13-213(b)(2)(B) (emphasis added). This language demonstrates the legislature's clear intent for the vehicular homicide statute to be subject to all limitations and conditions set forth in the probation statute. As a result, the two statutes can be reasonably read together without conflict.

Because we conclude that Tennessee Code Annotated section 39-13-213 and section 40-35-303 are not in conflict, we do not rely on the doctrine of repeal by implication. We reject Defendant's contention that we must choose between the doctrine of repeal by implication or Defendant's interpretation of the statute. Again, the vehicular homicide statute was written such that it is subject to the probation eligibility statute by the words "pursuant to § 40-35-303." It is certainly possible that the legislature kept the mandatory minimum language within the vehicular homicide statute while also making it subject to the terms of the probation statute to maintain an element of flexibility if, for example, the probation statute was to be further amended in the future to again allow probation to those convicted of vehicular homicide by intoxication. As such, we conclude that Defendant's argument is without merit.

## IV. CONCLUSION

For the foregoing reasons, we hold that the plain language of the probation eligibility statute, section 40-35-303, prohibits defendants convicted of vehicular homicide by intoxication from receiving any form of probation, including periodic and split confinement sentences. We therefore affirm the decision of the Court of Criminal Appeals. It appearing that Defendant, Ebony Robinson, is indigent, costs of this appeal are taxed to the State of Tennessee.

_____
ROGER A. PAGE, CHIEF JUSTICE