# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
Assigned on Briefs January 24, 2012

## JAMES WILLIAM SWAFFORD, JR. v. STATE OF TENNESSEE

**Appeal from the Criminal Court of Sullivan County**
**No. C58,166     R. Jerry Beck, Judge**

_____

**No. E2011-01390-CCA-R3-PC - Filed May 4, 2012**

_____

James William Swafford, Jr. ("the Petitioner") filed for post-conviction relief from his multiple convictions for drug and other offenses which resulted in an effective sentence of thirty-three years in the Tennessee Department of Correction. He alleges that he received ineffective assistance of counsel in conjunction with his guilty plea and that his plea was constitutionally infirm. After an evidentiary hearing, the post-conviction court denied relief, and this appeal followed. Upon our careful review of the record, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment**
**of the Criminal Court Affirmed**

JEFFREY S. BIVINS, J., delivered the opinion of the Court, in which NORMA MCGEE OGLE and ROBERT W. WEDEMEYER, JJ., joined.

Joseph F. Harrison, Blountville, Tennessee, for the appellant, James William Swafford, Jr.

Robert E. Cooper, Jr., Attorney General & Reporter; Rachel E. Willis, Assistant Attorney General; Barry P. Staubus, District Attorney General; Joseph Eugene Perrin, Assistant District Attorney General; for the appellee, State of Tennessee.

## OPINION

### Factual and Procedural Background

The Petitioner entered into a plea agreement to dispose of multiple felony and misdemeanor charges in five cases. Pursuant to the agreement, the Petitioner pled guilty in August 2009 to twelve drug or drug-related felonies; two counts of felony tax fraud; three counts of felony theft; four counts of money laundering; one count of forgery; two counts of coercing a witness; one count of extortion; and one count of retaliation for past action. He

also pled guilty to several misdemeanors. The Petitioner was a Range I offender, and, pursuant to the plea agreement, he was sentenced to the minimum sentence on nine of the felonies; to a midrange sentence on four of the felonies; and to the maximum sentence on thirteen of the felonies. The plea agreement provided for a combination of concurrent and consecutive sentences such that the Petitioner received an effective sentence of thirty-three years to serve, with the last three of these years suspended and to be served on five years of probation. The Petitioner was informed that he was eligible to be considered for release on parole after serving thirty percent of his sentence. Although the State charged the Petitioner with one count of possession of twenty-six grams or more of cocaine with the intent to sell or deliver within a school zone, the Petitioner was allowed to plead guilty to the lesser-included offense of possession of twenty-six grams or more of cocaine with the intent to sell or deliver. The Petitioner thereby avoided having to serve a mandatory sentence of fifteen years at one hundred percent.[1]

The Petitioner subsequently filed for post-conviction relief, alleging that he had received ineffective assistance of counsel in conjunction with his plea and that his plea was constitutionally infirm. After an evidentiary hearing, at which the Petitioner and his three retained trial lawyers testified, the post-conviction court denied relief. This appeal followed.

At the post-conviction hearing, the Petitioner testified that he was thirty-six years old and had been serving his sentence for almost three years. He initially hired his trial attorney ("Trial Counsel One") who subsequently advised him to hire two additional lawyers, each of whom had particular expertise in criminal matters ("Trial Counsel Two" and "Trial Counsel Three"). The Petitioner met with all three lawyers, both while he was on bond and subsequently when he was in court. He told his lawyers that he wanted to go to trial. Nevertheless, they never sat down and discussed a trial strategy. The Petitioner acknowledged, however, that his lawyers filed motions on his behalf and were successful in severing his case from that of his codefendants. In his view, the whole case against him had been "blown out of proportion" and he had been "overcharged."

Plea bargain discussions began during the wiretap suppression hearing on July 22, 2009. At that point in time, the Petitioner testified, he had not authorized his lawyers to negotiate for a plea bargain.

---

[1] See Tenn. Code Ann. § 39-17-432(c)-(f) (2006). See also Davis v. State, 313 S.W.3d 751, 762-63 (Tenn. 2010).

The Petitioner asserted that none of his lawyers completely explained to him the written plea of guilty. He saw the document on the morning he entered his plea. He testified:

> Well, I tried to – I tried to look over the guilty plea as – as much as I could. And I didn't understand a lot of stuff. And I – I'm not ashamed to say that I was – I was really uneducated about the – the way things was [sic] laid out until I got to prison and started doing some studying in the law library and finding out what merging and consecutive – the way it was running. And at the time I really didn't understand how that was all set about. I just understood the 30 years and it was a concurrent sentence.
>
> But if I would – if I would have took the time – if they would have took [sic] the time and told me how it was laid out, that they had to build a 30 as is a 15, a 12, and a three to serve, as – as a concurrent, as I know now, I – I would have definitely went [sic] to trial on – on the issue.

He added that he "was just confused that – that day, what was really going on." He complained that the description of the range of punishment for each offense listed on the plea document included the entire statutory range, rather than just the range to which he was subject as a standard offender. He described this description as "trickery" and explained that he thought he was subject to sixty years on his Class A felonies, instead of just twenty-five years.[2]

The Petitioner maintained that his lawyers did not explain that, if he went to trial and was convicted, the trial court would then hold a sentencing hearing and that enhancing and mitigating factors would be involved. He testified that his lawyers did not explain that he was pleading guilty to the maximum Range I sentence on several of his charges. The Petitioner also stated that his lawyers did not explain the consecutive aspect of his plea-bargained sentence to him and did not explain the factors that would be considered before he could be sentenced to consecutive sentences after a trial. The Petitioner testified that he had never been convicted of a felony before he pled guilty and had never been in a criminal court other than general sessions.

When asked why he pled guilty instead of insisting on a trial, the Petitioner explained that, during a break in the suppression hearing, he met with all three of his lawyers and they spoke with him about a recent case from the Court of Criminal Appeals (State v. Moore, 309

---

[2] See Tenn. Code Ann. § 40-35-112(a)(1) (2006) (providing that "[a] 'Range I' sentence is . . . [f]or a Class A felony, not less than fifteen (15) nor more than twenty-five (25) years").

S.W.3d 512 (Tenn. Crim. App. 2009)) in which a defendant facing similar charges had been sentenced to ninety-three years. On the basis of this case, his lawyers advised him to take the thirty-year plea bargain. His lawyers did not tell him that the defendant in that case had entered a plea bargain for the ninety-three years.[3] Nor did they explain that the ninety-three year sentence might have been influenced by the defendant's criminal history, which was worse that the Petitioner's. The Moore case "scared" the Petitioner and he understood his lawyers to be telling him that he would get a similar sentence if he did not take the plea bargain. The Petitioner maintained that, if not for his lawyers' advice concerning the Moore case, he would not have taken the plea. The Petitioner also asserted that he felt pressured by the prosecutor's stated intention to withdraw the plea bargain on resumption of the suppression hearing.

On cross-examination, the Petitioner acknowledged that he understood that his charge of cocaine possession within a school zone carried a mandatory fifteen-year sentence to be served at one hundred percent. He was also aware that the State dropped this charge to a lesser-included offense as part of the plea bargain. He admitted that he was out on bond from January 2007 to September 2008 and met with his attorneys numerous times during that period. He denied that his lawyers discussed with him the criteria for a trial court's imposition of consecutive sentences. He stated that, when he asked his lawyers what he should do, they responded, "Take the plea. Do nine years. Get out of prison." His lawyers did not tell him, however, that he was not guaranteed to be released in nine years. He subsequently admitted that the trial court informed him during the plea that he would not necessarily be released on parole at the earliest possible date.

Trial Counsel One testified that he discussed the need to hire additional counsel with the Petitioner and advised the Petitioner to hire the additional lawyers in order to assist the Petitioner in his desire to "fight these charges." According to Trial Counsel One, the Petitioner was "very pleased" with the addition of Trial Counsel Two and Trial Counsel Three to the defense team. Trial Counsel One met with the Petitioner on a weekly basis "for over a year." He shared discovery with the Petitioner and also advised the Petitioner when any of his multiple codefendants reached an agreement with the prosecution. Trial Counsel One described the Petitioner as an "[e]xtremely intelligent man" and asserted that he never had any trouble explaining things to the Petitioner. He explained that he had known the Petitioner "since [the Petitioner] was six years old" and considered the Petitioner "a personal friend." The defense team filed numerous motions and there were numerous hearings. However, the defense team did not prevail on their substantive motions.

---

[3] We note that the trial court ordered consecutive sentencing in the Moore case, a ruling that the defendant subsequently challenged in the appeal. See Moore, 309 S.W.3d at 532. Apparently, therefore, consecutive service was not a part of the plea bargain.

Trial Counsel One discussed particularly with the Petitioner the school zone charge which carried a penalty of fifteen to twenty-five years at one hundred percent service. When the State made its plea offer, the team had extensive discussions with the Petitioner and discussed specifically the risk of consecutive sentencing. According to Trial Counsel One, after the discussion, the Petitioner "wished to accept [the] offer. And he was very relieved and – and actually in very good spirits." Before the Petitioner made his decision, Trial Counsel One gave him the paperwork and instructed him to read it on his own. Then, Trial Counsel read the paperwork out loud to the Petitioner, word for word, to ensure that the Petitioner understood the plea. The Petitioner asked Trial Counsel One, "do you think this is what I should do?" Trial Counsel One responded, "I can't tell you what to do. I think under the circumstances this is as good as we're going to do." Trial Counsel One emphasized that there "was never any doubt" that he was prepared to go to trial if the Petitioner rejected the offer.

On cross-examination, Trial Counsel One acknowledged that he did not have any records documenting the number of times or the number of hours he met with the Petitioner. He also acknowledged that about fifty percent of the Petitioner's weekly visits were spent discussing personal matters other than the case. Trial Counsel One testified that he tried to interview witnesses, most of whom were codefendants, but that their attorneys would not permit it. He discussed trial strategy with the Petitioner. They also discussed the possibility of the Petitioner testifying at his trial. He furnished the Petitioner with statements made by his codefendants. He discussed the different ranges of sentences with the Petitioner and the Petitioner "knew he was a Range 1, standard offender." As they went over the plea agreement, Trial Counsel One explained what the Petitioner's range of sentence exposure was on each felony. They went over the elements that the State would have to prove with respect to each crime charged. They discussed what the trial court would have to find in order to impose consecutive sentences. He also explained that the plea called for the Petitioner to plead to the maximum sentence in the range on some of the offenses. Trial Counsel One acknowledged that the Petitioner was "not happy" on learning that, in a case dealing with similar charges, the defendant was sentenced to ninety-three years.

Trial Counsel Two testified that his primary responsibility as co-counsel was to concentrate on the wiretap evidence and the pretrial hearings. In this regard, he and the Petitioner "spent days together" during which they "gathered evidence that related not merely to the wiretap issue, but . . . [also to] some of the substantive offenses." He and the Petitioner had discussions about the case during this time. He was particularly concerned about the school zone charge and expressed those concerns to the Petitioner.

When the State extended its plea offer, Trial Counsel Two discussed it with the Petitioner and informed him that the State did not intend to negotiate. He also discussed with the Petitioner the possibilities of concurrent and consecutive sentences. Trial Counsel Two

described this as his "great concern" because, in Trial Counsel Two's opinion, even if they prevailed on the conspiracy charges, "there were sufficient substantive offenses . . . that . . . he ran . . . a substantial risk of getting as much or more than the sentence that was being offered." Trial Counsel Two reiterated that the Petitioner made the decision to accept the plea offer.

On cross-examination, Trial Counsel Two acknowledged that he did not have a written record of his meetings with the Petitioner or time records reflecting the amount of time he spent on the Petitioner's case. He also acknowledged that the Petitioner wanted to go to trial "if he could." He testified that he discussed with the Petitioner the proof that the State had with which it intended to establish the offenses.

Trial Counsel Three testified that he was hired to assist in the preparation of motions in the case, which included reviewing "a ton of discovery." He also met with the Petitioner on four or five occasions, spending six or seven hours together during each meeting. He described the Petitioner as "a very bright young man."

Trial Counsel Three explained that, initially, Trial Counsel One and Trial Counsel Two disagreed about whether the Petitioner had exposure to consecutive sentences. According to Trial Counsel Three,

> this disagreement was occurring right in front of [the Petitioner]. We were – we were clearly having a back-and-forth with regard to the potential for the sentencing then. And I – I think I was probably the one that handed [the Petitioner] the – the [Moore] case.
>
> And I said, "Look, here's – here's all you need to know about this particularly. That is, the judge who's going to sit in on our case, when it comes down to the sentencing, is going to be able to make that determination. Now, his determination is something that [Trial Counsel One and Two] can fight, and it's something that you can appeal. But the idea that the judge can give you consecutive sentence[s] is clear in this particular case. You can get that."

In sum, the Petitioner was informed about the possibility of consecutive sentences, and he "was upset by this part of it." In response, Trial Counsel One told the Petitioner that they would "try [his] case if that's what [he] want[ed] to do." At the time Trial Counsel Three left the meeting, he had no impression about the decision the Petitioner was going to make.

In addition to this testimony, the Petitioner's plea documents and the transcript of the guilty plea hearing were admitted as exhibits. On the basis of this proof, the post-conviction

-6-

court denied relief. The post-conviction court specifically accredited the testimony of Trial Counsel One, Two and Three.

As to the claim of ineffective assistance of counsel, the post-conviction court found that the Petitioner had authorized his lawyers to enter into plea negotiations, that his lawyers did not perform inadequately in failing to file a motion for change of venue, and that his attorneys communicated adequately with him. It also rejected the Petitioner's claim that his attorneys did not adequately explain the plea agreement, including the sentences, to him. The post-conviction court also rejected the Petitioner's claim that his plea was involuntary, finding that his attorneys did not use the Moore case to coerce him into pleading guilty, and that the prosecutor's statement that it would withdraw the plea offer if not accepted by the deadline was not coercive, noting that, "[u]nder existing Tennessee Law, a plea offer may be withdrawn at any time before a defendant accepts the plea offer." In sum, the post-conviction court concluded that the Petitioner had failed to demonstrate either that he had received ineffective assistance of counsel or that his plea was constitutionally infirm.

In his brief before this Court, the Petitioner contends that his attorneys were ineffective and that his plea was constitutionally infirm because his attorneys

> failed to properly investigate potential witnesses in the case, failed to communicate any trial strategy to him, failed to provide him with sufficient information for him to understand what sentences he might be facing as a Range I offender, and ultimately frightened him into accepting a plea bargain offer by showing him a somewhat dissimilar case in which a defendant entered a guilty plea for a 93 year sentence.

The State disagrees.

## Analysis

### Standard of Review

Relief pursuant to a post-conviction proceeding is available only where the petitioner demonstrates that his or her "conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." Tenn. Code Ann. § 40-30-103 (2006). To prevail on a post-conviction claim of a constitutional violation, the petitioner must prove his or her allegations of fact by "clear and convincing evidence." Tenn. Code Ann. § 40-30-110(f) (2006). See Momon v. State, 18 S.W.3d 152, 156 (Tenn. 1999). This Court will not overturn a post-conviction court's findings of fact unless the preponderance of the evidence is otherwise. Pylant v. State, 263 S.W.3d 854, 867 (Tenn. 2008); Sexton v. State, 151 S.W.3d 525, 531 (Tenn. Crim.

App. 2004). We will defer to the post-conviction court's findings with respect to the witnesses' credibility, the weight and value of their testimony, and the resolution of factual issues presented by the evidence. Momon, 18 S.W.3d at 156. With respect to issues raising mixed questions of law and fact, however, including claims of ineffective assistance of counsel, our review is de novo with no presumption of correctness. See Pylant, 263 S.W.3d at 867-68; Sexton, 151 S.W.3d at 531.

*Ineffective Assistance of Counsel*

The Sixth Amendment to the United States Constitution and article I, section 9 of the Tennessee Constitution guarantee a criminal defendant the right to representation by counsel at trial.[4] Both the United States Supreme Court and the Tennessee Supreme Court have recognized that this right is to "reasonably effective" assistance, which is assistance that falls "within the range of competence demanded of attorneys in criminal cases." Strickland v. Washington, 466 U.S. 668, 687 (1984); see also Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). The deprivation of effective assistance of counsel at trial presents a claim cognizable under Tennessee's Post-Conviction Procedure Act. See Tenn. Code Ann. § 40-30-103; Pylant, 263 S.W.3d at 868.

In order to prevail on a claim of ineffective assistance of counsel, the petitioner must establish two prongs: (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced the defense. See Strickland, 466 U.S. at 687; Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996). The petitioner's failure to establish either prong is fatal to his or her claim of ineffective assistance of counsel. Goad, 938 S.W.2d at 370. Accordingly, if we determine that either prong is not satisfied, we need not consider the other prong. Id.

To establish the first prong of deficient performance, the petitioner must demonstrate that his lawyer's "acts or omissions were so serious as to fall below an objective standard of 'reasonableness under prevailing professional norms.'" Vaughn v. State, 202 S.W.3d 106, 116 (Tenn. 2006) (quoting Strickland, 466 U.S. at 688)). Our Supreme Court has explained that:

> [T]he assistance of counsel required under the Sixth Amendment is counsel reasonably likely to render and rendering reasonably effective assistance. It is a violation of this standard for defense counsel to deprive a criminal defendant of a substantial defense by his own ineffectiveness or incompetence.

---

[4] The Sixth Amendment right to counsel is applicable to the States through the Fourteenth Amendment to the United States Constitution. See Gideon v. Wainwright, 372 U.S. 335, 342 (1963); State v. Howell, 868 S.W.2d 238, 251 (Tenn. 1993).

Defense counsel must perform at least as well as a lawyer with ordinary training and skill in the criminal law and must conscientiously protect his client's interest, undeflected by conflicting considerations.

Baxter, 523 S.W.2d at 934-35 (quoting Beasley v. United States, 491 F.2d 687, 696 (6th Cir. 1974)). When a court reviews a lawyer's performance, it "must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's conduct, and to evaluate the conduct from the perspective of counsel at that time." Howell v. State, 185 S.W.3d 319, 326 (Tenn. 2006) (citing Strickland, 466 U.S. at 689). Additionally, a reviewing court "must be highly deferential and 'must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" State v. Honeycutt, 54 S.W.3d 762, 767 (Tenn. 2001) (quoting Strickland, 466 U.S. at 689). We will not deem counsel to have been ineffective merely because a different strategy or procedure might have produced a more favorable result. Rhoden v. State, 816 S.W.2d 56, 60 (Tenn. Crim. App. 1991). We recognize, however, that "deference to tactical choices only applies if the choices are informed ones based upon adequate preparation." Cooper v. State, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992) (citing Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982)).

As to the prejudice prong, the petitioner must establish a "reasonable probability that but for counsel's errors the result of the proceeding would have been different." Vaughn, 202 S.W.3d at 116 (citing Strickland, 466 U.S. at 694). In the context of a guilty plea, our analysis of this prong

focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. In other words, in order to satisfy the "prejudice" requirement, the [petitioner] must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.

Hill v. Lockhart, 474 U.S. 52, 59 (1985). See also Calvert v. State, 342 S.W.3d 477, 486 (Tenn. 2011).

Turning to the Petitioner's specific allegations, we hold that the evidence does not preponderate against the post-conviction court's findings. The testimony by the Petitioner's three trial lawyers established that they communicated with him extensively, that they thoroughly discussed the charges and the evidence with him, that they zealously pursued a defense by filing multiple motions and participating in extensive hearings with the goal of having at least some of the evidence suppressed and the State's case thereby weakened, and that they explained the plea bargain offer and discussed its pros and cons, including the sentencing issues. We agree with the post-conviction court that the Petitioner failed to

establish that any of his lawyers was deficient in any manner. Accordingly, the Petitioner is not entitled to post-conviction relief on the grounds of ineffective assistance of counsel.

*Validity of Guilty Plea*

The Petitioner also asserts that his plea was unknowing because the plea documents expressed his sentence exposure in terms of the minimum and maximum statutory penalties irrespective of his Range I status and that he was not informed otherwise, and that it was involuntary because his lawyers "frightened" him into taking it by telling him he would otherwise be sentenced like the defendant in the Moore case. We agree with the post-conviction court that the Petitioner has failed to prove either of these claims by clear and convincing evidence.

To be valid, a guilty plea must be entered knowingly, voluntarily, and intelligently. See Boykin v. Alabama, 395 U.S. 238, 242-44 (1969); State v. Mackey, 553 S.W.2d 337, 340 (Tenn. 1977). A plea meets constitutional muster when the defendant understands both what the plea connotes and its consequences, Blankenship v. State, 858 S.W.2d 897, 904 (Tenn. 1993) (citing Boykin, 395 U.S. at 244), and makes a voluntary and intelligent choice from the alternative courses of action available to plead guilty. Jaco v. State, 120 S.W.3d 828, 831 (Tenn. 2003) (citing North Carolina v. Alford, 400 U.S. 25, 31 (1970)). In Mackey, 553 S.W.2d at 341, our Supreme Court set forth the procedure that a trial court should follow when accepting a guilty plea in order to ensure that a defendant's plea is knowing, voluntary, and intelligent. See also Tenn. R. Crim. P. 11(b). A trial court must "substantially comply" with this procedure. State v. Newsome, 778 S.W.2d 34, 38 (Tenn. 1989).

The post-conviction court carefully reviewed the transcript of the Petitioner's guilty plea, noting that it was 89 pages long; that the trial judge "went over the plea agreement in great detail and the [P]etitioner . . . indicated he understood the plea agreement"; and that the Petitioner, while under oath, answered affirmatively when asked if he understood "the nature of the charges against [him], the potential range of punishment and the plea agreement in this case." The post-conviction court also noted the following exchange at the plea hearing:

THE COURT: . . . Did you read [the plea documents] before you signed them?

DEFENDANT SWAFFORD: Yes

THE COURT: Did you understand each and every word on them?

DEFENDANT SWAFFORD: Uh-huh.

-10-

THE COURT: Was there anything you did not understand?

DEFENDANT SWAFFORD: No sir.

THE COURT: Is there anything you would like . . . me to explain to you?

DEFENDANT SWAFFORD: No.

THE COURT: All right. Do you have any question at all?

DEFENDANT SWAFFORD: No.

The post-conviction court concluded that the Petitioner had failed to establish that his plea was not intelligent, knowing, and voluntary and, accordingly, that the Petitioner was not entitled to post-conviction relief on the basis that his guilty plea was constitutionally infirm.

The evidence does not preponderate against the post-conviction court's findings. This Court has reviewed the transcript of the guilty plea hearing and concludes that it was constitutionally sound.[5] The Petitioner's claims that he did not understand either the sentence being imposed pursuant to the agreement or the actual sentencing exposure he faced if he proceeded to trial, and that he was "frightened" by his attorneys into accepting the plea, are not supported by the record. Accordingly, the Petitioner is not entitled to post-conviction relief on this basis.

### Conclusion

For the foregoing reasons, the Petitioner has failed to establish that he is entitled to post-conviction relief. Therefore, we affirm the judgment of the post-conviction court denying relief.

_____
JEFFREY S. BIVINS, JUDGE

---

[5] We note that the written plea document sets forth for each charge the sentence range inclusive of all three potential ranges. See Tenn. Code Ann. § 40-35-112. Thus, for each A felony charge, the documents set forth the sentence range as "15-60 years." The trial court repeated this information during the plea hearing. Tennessee Rule of Criminal Procedure 11 requires a trial court to inform a defendant pleading guilty of "the maximum possible penalty and any mandatory minimum penalty." Tenn. R. Crim. P. 11(b)(1)(B). The maximum possible penalty for any given defendant, however, should refer to the sentencing range applicable to the defendant.

-11-