
IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs December 14, 2016

## LUIS NAPOLEON PAZ v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Davidson County**
**No. 2012-C-2474    Cheryl A. Blackburn, Judge**

_____

## No. M2016-00069-CCA-R3-PC

_____

The petitioner, Luis Napoleon Paz, appeals the denial of his petition for post-conviction relief, arguing the post-conviction court erred in finding he received effective assistance of counsel. Following our review, we affirm the denial of the petition.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

J. ROSS DYER, J., delivered the opinion of the court, in which D. KELLY THOMAS, JR. and CAMILLE R. MCMULLEN, JJ., joined.

Celia Marie Stacey, Nashville, Tennessee, for the appellant, Luis Naoleon Paz.

Herbert H. Slatery III, Attorney General and Reporter; M. Todd Ridley, Assistant Attorney General; Glenn Funk, District Attorney General; and Jeff Burks and Megan King, Assistant District Attorney Generals, for the appellee, State of Tennessee.

## OPINION

### FACTS

After being indicted for first degree murder (Count 1) and employment of a firearm during a dangerous felony (Count 2), the petitioner pled guilty to the lesser included offense of second degree murder.[1] Pursuant to *Hicks v. State*, the negotiated plea deal imposed an out-of-range sentence of thirty years in confinement to be served at 100%. 945 S.W.2d 706, 709 (Tenn. 1997). The thirty-year sentence offered in the plea deal fell "out-of-range" because a second degree murder conviction at trial would have

_____

[1] Count 2 was dismissed as part of the plea deal.

carried a sentencing range of only fifteen to twenty-five years for the petitioner, a Range I offender. *See* Tenn. Code Ann. § 40-35-112(a)(1).

As a result, the petitioner filed a *pro se* petition for post-conviction relief alleging ineffective assistance of counsel regarding his lack of understanding of the imposed, out-of-range sentence. In his amended post-conviction petition, the petitioner claimed "his guilty pleas were not entered into knowingly and voluntarily because he did not understand the consequences of pleading guilty to second degree murder." The petitioner ultimately stated if that "counsel [had] adequately advised petitioner of the maximum sentence for the lesser offenses, he would not have pled guilty and would have insisted on proceeding to trial."

The post-conviction court conducted an evidentiary hearing wherein the petitioner and counsel both testified. The court summarized the hearing testimony as follows:

> Petitioner testified [counsel] represented him, and she discussed with him the benefits of trial and the guilty plea. Counsel advised him the guilty plea was more beneficial for him because he would receive less time. Petitioner stated that counsel did not advise him, however, of the potential sentence he faced in number of years should he be convicted at trial. When questioned whether he has thought about what kind of sentence he would receive if convicted at trial, [p]etitioner responded, "No."

> Petitioner testified he now understands that he accepted a higher sentence than his range, but at the time of his plea he did not understand what it meant to "plead out of range." He stated that he did not understand the consequences of his plea "other than I was serving 30 years." Petitioner acknowledged that [t]rial [c]ounsel provided the "witness paperwork" showing what "facts they knew" and how they would testify at trial.

> On cross-examination, [p]etitioner agreed that he was represented by [counsel] in [g]eneral [s]essions as well as in [c]riminal [c]ourt. In [g]eneral [s]essions he had two appearances, including a preliminary hearing where the man who identified [p]etitioner as the shooter, Ladarion Smith, testified. Petitioner could not quantify the number of times [t]rial [c]ounsel met with him about his case, but he agreed that (*sic*) she met with him multiple times during court appearances in [c]riminal [c]ourt as well as outside of court.

> Petitioner testified that he wanted to go to trial and his case was set for trial in September 2013, but [t]rial [c]ounsel advised him taking a guilty

plea was better for him because of the witnesses. Petitioner testified since his trial was only a few weeks away when they had this discussion, he told [t]rial [c]ounsel to "get me something," and she came back with the 30-year offer. Petitioner conceded that [t]rial [c]ounsel discussed with him possible defenses should the case go to trial.

Petitioner's recollection of his plea hearing was spotty. For example, [p]etitioner did not recall the [c]ourt explaining the 15- to 25-year range to him although he did recall the [c]ourt advising the sentence was to be served at 100% due to the nature of the offense. Petitioner testified that he was telling the truth during his plea hearing.

The [c]ourt clarified that [p]etitioner was under oath and told the truth during his plea hearing. Petitioner did not dispute what occurred at his plea hearing; rather, he just did not remember some of the hearing.

[Trial counsel] testified that she has served as an assistant public defender for almost 10 years in Tennessee, devoting 100% of her practice to criminal defense work. She stated she met with [p]etitioner at least once prior to the preliminary hearing once he was extradited from Florida. She also met with him on each of the nine [c]riminal [c]ourt appearances as well as outside of court approximately 25 times. During these meetings, she discussed the charges with [p]etitioner, his exposure for the charged offense of first degree murder versus the 30-year offer for second degree murder, and range of punishment for lesser included offenses. Trial [c]ounsel stated she discussed with [p]etitioner the difference between first and second degree murder.

Trial [c]ounsel testified that [p]etitioner asked to accept the State's offer. Trial [c]ounsel believes she met with [p]etitioner the day before the plea hearing to go over the plea petition. She recalled going over it together in CJC, where she read the petition aloud while [p]etitioner followed along.

On cross-examination, [t]rial [c]ounsel agreed she could not recall the specifics of going over the plea with [p]etitioner. She conceded [p]etitioner may not have understood the phrase "out of range," but maintained [p]etitioner understood the difference between accepting 30 years as part of the plea versus going to trial and facing the exposure of a first degree murder conviction with a life sentence. That is, [p]etitioner was

aware of and understood his options to either go to trial with the known evidence against him or accept the State's offer.

After its review, the post-conviction court held the petitioner failed to show he received ineffective assistance of counsel. In denying relief, the court noted that both the petitioner's and trial counsel's testimony "indicated he understood the concept [of out-of-range sentencing] and that he chose to accept the 30-year sentence because it was less time than he would face should he be convicted at trial of first degree murder as charged." This appeal followed.

**ANALYSIS**

On appeal, the petitioner alleges trial counsel was ineffective because she failed to fully explain the terms of his plea deal, specifically the fact that he was pleading out-of-range. The State argues the petitioner has failed to meet his burden of proving he received ineffective assistance of counsel. After our review, we agree with the State.

The petitioner bears the burden of proving his post-conviction allegations of fact by clear and convincing evidence. *See* Tenn. Code Ann. § 40-30-110(f). The findings of fact established at a post-conviction evidentiary hearing are conclusive on appeal unless the evidence preponderates against them. *See Tidwell v. State,* 922 S.W.2d 497, 500 (Tenn. 1996). This Court will not reweigh or reevaluate evidence of purely factual issues. *See Henley v. State,* 960 S.W.2d 572, 578 (Tenn. 1997). However, appellate review of a trial court's application of the law to the facts is *de novo,* with no presumption of correctness. *See Ruff v. State,* 978 S.W.2d 95, 96 (Tenn. 1998). The issue of ineffective assistance of counsel presents mixed questions of fact and law. *See Fields v. State,* 40 S.W.3d 450, 458 (Tenn. 2001). Thus, this Court reviews the petitioner's post-conviction allegations *de novo,* affording a presumption of correctness only to the post-conviction court's findings of fact. *See Fields,* 40 S.W.3d at 458; *Burns v. State,* 6 S.W.3d 453, 461 (Tenn. 1999).

To establish a claim of ineffective assistance of counsel, the petitioner must show both that counsel's performance was deficient and that counsel's deficient performance prejudiced the outcome of the proceedings. *Strickland v. Washington,* 466 U.S. 668, 687 (1984); *see State v. Taylor,* 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (noting that the standard for determining ineffective assistance of counsel applied in federal cases is also applied in Tennessee). The *Strickland* standard is a two-prong test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by

-4-

the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

466 U.S. at 687. In order for a post-conviction petitioner to succeed, both prongs of the *Strickland* test must be satisfied. 466 U.S. at 687. Thus, courts are not required to even "address both components of the inquiry if the defendant makes an insufficient showing on one." *Strickland*, 466 U.S. at 697; *see also Goad v. State,* 938 S.W.2d 363, 370 (Tenn. 1996) (stating that "a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim").

A petitioner proves a deficiency by showing "counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms." *Goad,* 938 S.W.2d at 369 (citing *Strickland,* 466 U.S. at 688; *Baxter v. Rose,* 523 S.W.2d 930, 936 (Tenn. 1975)). The prejudice prong of the *Strickland* test is satisfied when the petitioner shows there is a reasonable probability, or "a probability sufficient to undermine confidence in the outcome," that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694. Because the petitioner's ineffective assistance of counsel claims relate to his guilty plea, in order to show prejudice he "must prove that counsel performed deficiently and 'there is a reasonable probability that, but for counsel's errors, he would not have pled guilty and would have insisted on going to trial.'" *Grindstaff v. State*, 297 S.W.3d 208, 216–17 (Tenn. 2009) (quoting *Hill v. Lockhart,* 474 U.S. 52, 59 (1985)).

On appeal, the petitioner argues trial counsel's ineffective assistance led him to plead guilty to second degree murder "without being informed about what his overall exposure was and about what pleading out of range means." The record, however, shows otherwise. Both the guilty plea and the post-conviction hearings support the trial court's finding that the petitioner understood the nature of the plea deal, the potential sentences he faced at trial versus in the plea deal, and the strengths and weaknesses of his defense.

Prior to pleading guilty, the petitioner faced two options. He could proceed to trial under a first degree murder charge which carried a possible life sentence if convicted, or he could plead guilty to the lesser included offense of second degree murder which imposed a thirty-year sentence as a condition of the plea deal.

Second degree murder is a Class A felony which carries an overall sentencing range of "not less than fifteen (15) nor more than sixty (60) years." Tenn. Code Ann. § 40-35-111 (b)(1). The guilty plea, however, presented an "out-of-range" sentence based

on the petitioner's classification as a Range I offender.  Had the petitioner gone to trial and been convicted of second degree murder, his status, as a Range I offender, would have warranted a sentencing range between fifteen and twenty-five years.  Tenn. Code Ann. § 40-35-112 (a)(1).  Thus, the thirty-year offer exceeded the petitioner's sentencing exposure for second degree murder at trial, which would have been capped at twenty-five years.  However, the petitioner and the State are free to enter into "a 'hybrid' sentence that 'mixes and matches' range assignment, term of years, and release eligibility without regard to what our sentencing scheme might call for absent a plea bargain . . . ." *Davis v. State*, 313 S.W.3d 751, 760 (Tenn. 2010) (internal citations omitted).  This is precisely what happened in the petitioner's case.

Rather than proceeding to trial, the petitioner chose to plead guilty to second degree murder.  Under the plea deal and as noted on the judgment sheet, the petitioner received a thirty-year sentence as a multiple offender with a statutorily imposed 100% release eligibility.  Tenn. Code Ann. § 40-35-501(i).  Though the negotiated guilty plea deal offered an "out-of-range" sentence, the record indicates the petitioner was fully informed by counsel and the trial court of the out-of-range nature of the thirty-year sentence and, therefore, entered a knowing and voluntary plea.

The post-conviction court summarized the petitioner's position and highlighted pertinent testimony from the plea colloquy, as follows:

> In this case, [p]etitioner faced two unappealing options: to go to trial in a case where the State had strong evidence or to accept the State's only guilty plea offer of 30 years.  Granting post-conviction relief would simply place [p]etitioner in that same position of either going to trial on first degree murder, which carries a life sentence, and be tried on Count 2, or accepting a plea offer should the State even be willing to engage in plea negotiations.

> Moreover, the guilty plea transcript belies [p]etitioner's allegations.  During the plea hearing, the [c]ourt thoroughly explained to [p]etitioner more than once that he was pleading "out of range" and [p]etitioner affirmed he understood:

>> THE COURT: Now, the petition says you are going to be pleading guilty to the lesser included offense of murder in the second degree.  That's an A felony.  It's going to be a thirty-year sentence.  Now, you have a standard- actually that's not a standard.  That's a multiple offense thing, but the percentage is a hundred percent.  So it really-he's waiving the

-6-

range. This is what I need to ask you, [petitioner]. Had you gone to trial and been convicted of murder in the second degree- you were charged with murder in the first degree. But if you had been convicted of murder in the second degree, your range of punishment would have been fifteen to twenty-five years. But in order to sort of arrange for this plea agreement you've agreed to plead guilty to thirty years, rather than to go to trial and be convicted of murder in the first degree. Is that a correct statement?

[PETITIONER]: Correct.

THE COURT: All right. Now, let's go over again what you were charged with. You were charged with murder in the first degree. And I assume this is an intentional premeditated killing. That's what that means, murder in the first degree, that you intend to kill somebody and thought about it. The range of punishment would have been for you life imprisonment with the possibility of parole because the State has not given notice of any enhanced punishment in your case.
Now, you're not pleading guilty to that. You're pleading guilty to a knowing killing of another, which that range-the full range of punishment is fifteen to sixty years. But as a Range 1 offender, it's fifteen to twenty-five years. But you're waiving the twenty-five year limit and accepting a thirty-year sentence in order to get this plea to murder in the second degree. Do you understand that?

[PETITIONER]: Yeah.

The record shows the trial court conducted a thorough plea colloquy and found the petitioner understood his choice to forego a trial for first degree murder and plead guilty to the lesser included offense of second degree murder. In denying the petition, the post-conviction court found "the record, including the guilty plea transcript, affirmatively demonstrates that the [p]etitioner's guilty plea was made with an awareness of the consequences, and, as such, the guilty plea was voluntarily, intelligently, and knowingly entered." We agree.

The evidence in the record demonstrates that at the time the petitioner entered his guilty plea, he understood he would receive a thirty-year sentence for second degree

murder outside of the range he would have received if convicted at trial. The record indicates that prior to entering his plea of guilty, the petitioner met with counsel multiple times and discussed the strength of the State's case and the evidence against him, the differences between first and second degree murder and the sentences associated therewith, and the specifics of the plea deal offered by the State. The record shows the petitioner knew he faced a potential life sentence under the first degree murder charge while he faced a thirty-year sentence under the plea deal. Further, during the post-conviction evidentiary hearing, the petitioner testified he discussed the guilty plea proceedings with counsel, he understood the proceedings and his associated rights, and he was satisfied with counsel's representation. Accordingly, the record supports the post-conviction court's finding that the petitioner failed to meet his burden of proving ineffective assistance of counsel on the grounds that he did not understand the consequences of pleading guilty to second degree murder. The petitioner is not entitled to relief.

In order to succeed on his ineffective assistance claim, aside from presenting clear and convincing factual evidence establishing counsel's deficient performance, the petitioner must also establish prejudice. Specifically, the petitioner must show that but for counsel's alleged deficient performance, he would have insisted on going to trial. *See Grindstaff*, 297 S.W.3d at 216–17; *Strickland,* 466 U.S. at 687. The petitioner has not met this burden. The record is replete with evidence that the petitioner understood the options he faced prior to entering his guilty plea, the out-of-range sentencing associated with the guilty plea, and the rights he waived upon entering the guilty plea. Thus, not only has the petitioner failed to show counsel was ineffective, but also he cannot prove he was prejudiced. Without proof of prejudice, the petitioner's claims fail and he is not entitled to post-conviction relief on the grounds of ineffective assistance of counsel.

Finally, upon our review and as found by the post-conviction court, the record contains no proof to suggest the petitioner did not enter a knowing and voluntary guilty plea. The record indicates the trial court discussed the petitioner's right to confront the witnesses against him and to testify in his own defense if he were to go to trial. *See Jaco v. State*, 120 S.W.3d 828, 831 (Tenn. 2003) ("A plea is 'knowing' if the court informed the accused of his constitutional rights against self-incrimination, to confront accusers, and to trial by jury."). The record indicates the petitioner was fully informed by both trial counsel and the trial court of his options, to either go to trial or take the plea deal. The record also indicates the petitioner made "a voluntary and intelligent choice among the alternative courses of action" available to him when choosing to plead guilty. *Jaco*, 120 S.W.3d at 831 (quoting *North Carolina v. Alford*, 400 U.S. 25, 31 (1970) (internal quotations omitted)). As such, the record supports the trial court's finding that the petitioner entered a knowing and voluntary guilty plea to second degree murder. The petitioner is entitled to no further relief.

**CONCLUSION**

Based upon the foregoing authorities and reasoning, the judgment of the post-conviction court is affirmed.

_____
J. ROSS DYER, JUDGE