IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs July 10, 2018

## KELVIN REED v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Shelby County**
**No. 07-05352      W. Mark Ward, Judge**

_____

## No. W2017-02419-CCA-R3-ECN

_____

The pro se Appellant, Kelvin Reed, appeals the Shelby County Criminal Court's summary dismissal of his "Petition for Writ of Error Coram Nobis and Motion to Vacate Illegal Sentence." Although Reed acknowledges that his petition for coram nobis relief was untimely, he argues that due process concerns require tolling of the one-year statute of limitations. He also contends, with regard to his motion to vacate his illegal sentence, that the trial court's order was not a final order because it failed to dismiss his motion under Rule 36.1 and failed to make the appropriate legal determinations, thereby divesting this court of jurisdiction to hear this appeal. We affirm the trial court's summary dismissal of Reed's petition and motion.

 **Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which ALAN E. GLENN and D. KELLY THOMAS, JR., JJ., joined.

Kelvin Reed, Whiteville, Tennessee, pro se.

Herbert H. Slatery III, Attorney General and Reporter; Zachary T. Hinkle, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Tracye Jones, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

This case concerns Reed's convictions for the murder of his girlfriend. See State v. Kelvin Reed, No. W2009-00589-CCA-R3-CD, 2010 WL 4544777 (Tenn. Crim. App. Dec. 1, 2009), perm. app. denied (Tenn. Mar. 9, 2011). We will briefly summarize the facts from Reed's direct appeal that are relevant to this case.

The proof established that during the summer of 2006, the relationship between Reed and his girlfriend, the victim, deteriorated. Id. at *1. After Reed danced with several women other than the victim at his birthday party in July 2006, the victim and her children moved out of his home. Id.

During the early morning hours of November 5, 2006, Reed shot the victim four times, killing her. Id. at *2. The victim's nine-year-old daughter saw Reed pointing a gun at her mother and observed him dragging her mother into the kitchen. Id. The first 9-1-1 call, which was made by the victim, included a female voice screaming and several gunshots. Id. The victim's daughter made the second 9-1-1 call, wherein she stated that her mother had just been killed by her boyfriend. Id. The front door to the victim's apartment appeared to have been forced open. Id.

After Reed turned himself into the police, officers searched his car and found blood matching the victim's DNA inside and outside his vehicle. Id. at *3. Reed's cell phone records showed that he made fifty-seven calls to the victim in the twenty-four hour period prior to her death. Id. These records showed that Reed's last call to the victim, which took place at 2:27 a.m. and lasted twenty-seven minutes, occurred shortly before the victim's murder. Id. Records also showed that a woman named Deborah Hollowell called Reed's cell phone at 2:46 a.m. This call lasted twenty-eight seconds, and the signal used to receive that call was from a cell tower approximately one-half mile from the victim's apartment. Id.

At the conclusion of trial, the jury convicted Reed of first degree premeditated murder, felony murder, and aggravated burglary. Id. at *1. The trial court merged the murder convictions and imposed concurrent sentences of life imprisonment and three years, respectively. Id.

Reed filed a direct appeal, arguing that the evidence was insufficient to sustain his convictions, that the trial court erred in admitting certain evidence, and that the judgment form for aggravated burglary needed to be corrected to show his sentence for this conviction. Id. This court affirmed Reed's convictions but remanded the case to the trial court for entry of a corrected amended judgment for the aggravated burglary conviction. Id.

Following his unsuccessful direct appeal, Reed filed a petition for post-conviction relief. Kelvin Reed v. State, No. W2012-02533-CCA-R3-PC, 2014 WL 1410304, at *1 (Tenn. Crim. App. Apr. 10, 2014). The post-conviction court denied relief, and Reed appealed, arguing that trial counsel was ineffective in failing to present expert proof regarding the 9-1-1 calls and in failing to stress the absence of blood on his person or

possessions.  Id. at *1.  This court affirmed the denial of post-conviction relief.  Id. at *4-5.

On November 7, 2017, Reed filed a document entitled "Petition for Writ of Error Coram Nobis and Motion to Vacate Illegal Sentence."  In it, Reed asserted that his judgments and sentences were void, that he was illegally imprisoned, and that he was being held in violation of the Fifth, Eighth, and Fourteenth Amendments.  As to his coram nobis claim, Reed asserted that he had recently obtained newly discovered evidence that may have resulted in a different judgment had it been presented at trial and that he was entitled to equitable tolling of the statute of limitations because the State had concealed this evidence.

In his petition, Reed identified the following pieces of newly discovered evidence:

1.  Reed alleged that on September 25, 2017, he received "information via mail from Diane Waithers regarding grand jury foreperson 'Mary Thomas' signing and judging cases without being sworn in as a valid grand juror." Thereafter, Reed discovered that Mary Thomas was the grand jury foreperson in his case, which led him to conclude that Mary Thomas had signed his indictment and judged his case without being properly sworn in. Reed claimed that this information was newly discovered evidence because it was unknown to him "prior to, during, and after [his] criminal trial" because the State had concealed "its fraud, prosecutorial misconduct, and obstruction of justice," although Reed never explained how the State concealed this evidence.  Reed claimed that this newly discovered evidence would have resulted in a different judgment at trial because it provided additional evidence of the elected district attorney's "consistent pattern and propensity" of violating the rights of the accused and because it made it more probable that investigators "planted blood evidence on and in his car to procure a tainted and unreliable conviction."  He claimed this newly discovered evidence made his "indictments, convictions, sentence[s] . . . , and judgments . . . void and illegal ab initio."  To support this claim of newly discovered evidence, Reed attached his indictments, an unsigned statement that the district attorney had "violated law by allowing Grand Jury Foreman 'Mary Thomas' to sign and judge cases without being sworn in as a valid juror," an article from the Topeka Kansas Capital-Journal stating that "Shawnee County Commissioner-elect Mary Thomas was sworn into office," and an article from www.thepostmail.com."

2.  Reed also asserted that he received information that his previous attorney, who represented him on direct appeal but not at trial, had been

- 3 -

publicly censured in an unrelated case "for fraudulent attorney practices." He claimed that if this evidence had been known to him "prior to [his] post-conviction hearing, the outcome of the proceeding would have been different" because he would have been granted a new trial. Referencing this censure, Reed argued that his attorney's "desire for money ma[de] it much more probable that he failed to spend the money and time to conduct a thorough investigation into [his] case[.]" As support for this claim of newly discovered evidence, Reed attached a notice from the Board of Professional Responsibility regarding his attorney's public censure for "negligently engag[ing] in solicitation of attorney fees from a defendant's family while he was serving as appointed counsel for the indigent defendant in a federal criminal matter, without obtaining permission from the U.S. District Court prior to engaging in such solicitation, as was required by federal law."

3. Finally, Reed claimed that within the three weeks prior to filing his petition, he had "confer[red] with a technician who previously worked for one of the major telecommunications cell-phone companies," who apparently informed him that the State's witnesses may have provided "false, misleading, and extremely prejudicial [testimony]" regarding his cell phone records in his case. Reed asserted that this newly discovered evidence controverted the State's claim at trial that he was near the victim's home when Debra Hollowell called his cell phone and established that it would have been impossible for him to be at the crime scene during the times shown by the 9-1-1 event chronologies. Reed specifically focused on an alleged three minute and thirty second discrepancy between the event chronology from the 9-1-1 operator and the victim's cell phone records, an alleged forty-one-second discrepancy between his cell phone records and the victim's cell phone records, and purported cell tower information as to his location at certain times the day of the murder before making the unsupported conclusion that "it would have been legally and factually impossible for [him] to commit this offense[.]" As support for this claim of newly discovered evidence, Reed attached what appeared to be portions of testimony regarding the cell phone records from trial and portions of the State's closing argument at trial, an unsigned synopsis by Diane Simpkins entitled "How to Read Cricket Call Detail Records," an unsigned supplement by William D. Merritt indicating that he was unable to verify Reed's alibi for the victim's murder, MapQuest directions to Winchester Road Fitness and Monroe Avenue, and documents purported to be 9-1-1 event chronologies from November 5, 2006.

In his Rule 36.1 motion that was combined with his coram nobis petition, Reed argued that "[b]ecause [his] sentences and judgments are void and not merely voidable, said sentences and judgments are 'illegal,' as enunciated in Tenn. R. Crim. P. 36.1." Reed specifically claimed that evidence that grand jury foreperson Mary Thomas was not properly sworn in made his sentences on all convictions in case number 07-05352 "null, void, unconstitutional, and illegal on their faces 'ab initio,'" thereby entitling him to relief under "Rule 36.1."

On November 16, 2017, the trial court entered an order summarily denying the "Petition for Writ of Error Coram Nobis and Motion to Vacate Illegal Sentence," wherein it made the following findings:

(1) The petition is filed outside the one-year statute of limitations and does not allege with specificity a ground sufficient to require tolling. The Petitioner alleges fraud and concealment on the part of the District Attorney's office with regard to the claim that Mary Thomas was not properly sworn as a member of the grand jury and with regard to his discovery that some of the testimony in his trial regarding his cell phone records may have been false. The Petitioner fails to provide any specificity or details as to how and by whom this fraud and concealment was carried out by the District Attorney. Petitioner also fails to attach the affidavit of any person or to contain an allegation identifying any person who claims to have personal knowledge of such fraud and concealment. Petitioner cannot escape the statute of limitations just by reciting the "magic words" of fraud and concealment. Furthermore, the Grand Jury is an independent body and has no connection to the District Attorney.

(2) The petition does not set forth with particularity the form and substance of the newly discovered evidence. With regard to the claim that Mary Thomas was not properly sworn as a member of the grand jury, there is no indication of any evidence to support this allegation. Ex[h]. B contains nothing more than an "allegation" that Mary Thomas was not sworn. It contains no reference to any type of evidence whatsoever. Petitioner fails to attach the affidavit of any person or identify in the Petition any person who has personal knowledge of this matter. On the contrary, the records of this Court demonstrate that Mary Thomas was appointed to a two-year term to serve as foreperson [on] the grand jury by court order dated October 20, 2006. She was the duly appointed foreperson at the time of the return of the Petitioner's indictment on July 31, 2007.

(3)  Assuming for [the] sake of argument that the public censure of his post-conviction lawyer constituted "newly discovered evidence[,]" there is no way that it would have made a difference in the outcome in his trial.

(4)  With regard to the cell phone records the Petitioner failed to state an adequate ground establishing why the defendant was without fault in failing to discover and present the evidence earlier.  All this information could have been discovered at the time of trial and presented to the jury.  Again, any claim that this information was concealed from the Petitioner is nothing more than an unsupported allegation.  The Petition sets forth no information that there is any evidence or any person with personal knowledge to support the allegation.

Following entry of this order, Reed filed a timely notice of appeal.

## ANALYSIS

Reed argues that the trial court erred when it dismissed his petition for writ of error coram nobis without an evidentiary hearing and without the appointment of competent counsel.  He also contends, with regard to his motion to vacate his illegal sentence, that the trial court's order was not a final order because it failed to dismiss his motion under Rule 36.1 and failed to make the appropriate legal determinations, thereby divesting this court of jurisdiction to hear this appeal.  The State counters that the trial court's summary dismissal of the petition was proper because the petition for writ of error coram nobis was untimely, because Reed failed to show that due process required equitable tolling of the statute of limitations, and because none of the Petitioner's claims of newly discovered evidence entitle him to coram nobis relief.  The State also asserts that the trial court implicitly denied Reed's Rule 36.1 motion and that even if this court concludes that the trial court failed to rule on the Rule 36.1 motion, Reed would have no right of appeal as to this claim.  We conclude that the trial court's summary dismissal of both the petition for writ of error coram nobis and the motion to vacate an illegal sentence was proper.

**I.  Petition for Writ of Error Coram Nobis.**  Reed contends that the trial court erred when it dismissed his petition for writ of error coram nobis without an evidentiary hearing and without the appointment of competent counsel.  He claims that he alleged due process grounds sufficient to toll the one-year statute of limitations and that he identified the newly discovered evidence, stated why it qualified as newly discovered, detailed why it could not have been discovered in a more timely manner with the exercise of reasonable diligence, and explained how the newly discovered evidence may have resulted in a different outcome.

A petition for writ of error coram nobis is available to criminal defendants based on subsequently or newly discovered evidence. T.C.A. § 40-26-105(a), (b). However, a writ of error coram nobis is an "extraordinary procedural remedy" that "fills only a slight gap into which few cases fall." State v. Mixon, 983 S.W.2d 661, 672 (Tenn. 1999); State v. Workman, 111 S.W.3d 10, 18 (Tenn. Crim. App. 2002). Coram nobis petitions are governed by Tennessee Code Annotated section 40-26-105, which provides:

> The relief obtainable by this proceeding shall be confined to errors dehors the record and to matters that were not or could not have been litigated on the trial of the case, on a motion for a new trial, on appeal in the nature of a writ of error, on writ of error, or in a habeas corpus proceeding. Upon a showing by the defendant that the defendant was without fault in failing to present certain evidence at the proper time, a writ of error coram nobis will lie for subsequently or newly discovered evidence relating to matters which were litigated at the trial if the judge determines that such evidence may have resulted in a different judgment, had it been presented at the trial.

T.C.A. § 40-26-105(b). The decision to grant or deny a petition for writ of error coram nobis rests within the sound discretion of the trial court. State v. Hall, 461 S.W.3d 469, 496 (Tenn. 2015). If a petition for coram nobis relief is granted, the judgment of conviction will be set aside and a new trial will be granted. Payne v. State, 493 S.W.3d 478, 485 (Tenn. 2016).

Petitions for writ of error coram nobis must satisfy rigorous standards regarding specificity:

> The motion or petition must be in writing and (1) must describe with particularity the nature and substance of the newly discovered evidence and (2) must demonstrate that this evidence qualifies as "newly discovered evidence." In order to be considered "newly discovered evidence," the proffered evidence must be (a) evidence of facts existing, but not yet ascertained, at the time of the original trial, (b) admissible, and (c) credible. In addition to describing the form and substance of the evidence and demonstrating that it qualifies as "newly discovered evidence," the prisoner must also demonstrate with particularity (3) why the newly discovered evidence could not have been discovered in a more timely manner with the exercise of reasonable diligence; and (4) how the newly discovered evidence, had it been admitted at trial, may have resulted in a different judgment.

Harris v. State, 301 S.W.3d 141, 152 (Tenn. 2010) (Koch, J., concurring) (footnotes omitted), overruled on other grounds by Nunley v. State, --- S.W.3d ----, 2018 WL 3468745 (Tenn. 2018). In addition, petitions for coram nobis relief must be supported by affidavits that are "relevant, material, and germane" and are based on the affiant's "personal knowledge." Id. (citing State v. Hart, 911 S.W.2d 371, 375 (Tenn. Crim. App. 1995)). "Affidavits of the witnesses through whom the newly discovered evidence is sought to be introduced must explain the materiality of the evidence and must state that the evidence was not communicated to the prisoner or his or her trial counsel prior to the original trial." Id. at 153.

Summary dismissal, without discovery or an evidentiary hearing, is permissible when a petition is insufficient on its face. Nunley, --- S.W.3d ----, 2018 WL 3468745, at *18. As the Nunley court reiterated:

> "The sufficiency of the contents of a petition for writ of error coram nobis filed pursuant to Tenn. Code Ann. § 40-26-105 is of utmost importance. Judges anticipate that the petition itself embodies the best case the petitioner has for relief from the challenged judgment. Thus, the fate of the petitioner's case rests on the ability of the petition to demonstrate that the petitioner is entitled to the extraordinary relief that the writ provides."

Id. at *19 (quoting Harris, 301 S.W.3d at 150 (Koch, J., concurring)).

After reviewing Reed's petition for writ of error coram nobis, we conclude that the trial court's summary dismissal was proper because the petition was insufficient on its face. Reed's petition described the new evidence as (1) information that grand jury foreperson Mary Thomas signed his indictment and judged his case without being sworn in; (2) his attorney on direct appeal, but not at trial, had been publicly censured in an unrelated federal case; and (3) an unidentified technician for a cell phone company indicated that the State's witnesses had provided false, misleading, and prejudicial testimony about his cell phone records at trial. We fully agree with the trial court's findings that Reed failed to provide any evidence to substantiate his claim regarding Mary Thomas, that Reed's claim against his former attorney did not qualify as newly discovered evidence, and that Reed had failed to show how he was without fault in not discovering the cell phone evidence sooner. We find it significant that Reed attached no affidavits from individuals with personal knowledge to support his allegations and provided no credible evidence to substantiate his claims of newly discovered evidence. Most importantly, we conclude that Reed's exhibits do "not qualify as substantive admissible evidence that 'may have resulted in a different judgment, had it been presented at the trial.'" Id. (quoting T.C.A. § 40-26-105(b)). Because Reed's petition

was overwhelmingly insufficient on its face, the trial court's summary dismissal of the petition was proper.

In addition to the requirements regarding specificity, petitions for writ of error coram nobis are subject to a one-year statute of limitations. T.C.A. § 27-7-103. The statute of limitations is calculated from the date the judgment of the trial court becomes final, either thirty days after its entry in the trial court if no post-trial motions are filed or upon entry of an order disposing of a timely, post-trial motion. Payne, 493 S.W.3d at 484; Mixon, 983 S.W.2d at 670.

Here, it is undisputed that Reed filed his coram nobis petition after the expiration of the one-year statute of limitations, but the record does not show when Reed's motion for new trial was denied. In any case, we take judicial notice that Reed filed his notice of appeal in his direct appeal on March 6, 2009. See State v. Reed, No. W2009-00589-CCA-R3-CD (Tenn. Crim. App. Mar. 6, 2009) (docket entry indicating receipt of notice of appeal). Giving him the benefit of March 6, 2009, as the date the final judgment was entered, Reed had until March 6, 2010, at the latest, to file his petition for writ of error coram nobis. However, the record shows that Reed filed his petition for coram nobis relief on November 7, 2017, more than seven years after the expiration of the statute of limitations.

Because the petition in this case was untimely, we must next consider whether Reed has established that due process concerns require tolling of the one-year statute of limitations. Workman, 41 S.W.3d at 101-02. Due process requires the tolling of a statute of limitations period when a petitioner would otherwise be denied "'an opportunity for the presentation of claims at a meaningful time and in a meaningful manner.'" Id. at 102 (quoting Burford v. State, 845 S.W.2d 204, 208 (Tenn. 1992)). "To accommodate due process concerns, the one-year statute of limitations may be tolled if a petition for a writ of error coram nobis seeks relief based upon new evidence of actual innocence discovered after expiration of the limitations period." Nunley, --- S.W.3d ----, 2018 WL 3468745, at *21.

Given the extraordinary nature of the writ, petitioners must plead specific facts showing why they are entitled to equitable tolling of the statute of limitations. Id. If the petition for coram nobis relief fails to show on its face that it is filed within the one-year statute of limitations, the petition must set forth with particularity facts showing that the petitioner is entitled to equitable tolling:

"To be entitled to equitable tolling, a prisoner must demonstrate with particularity in the petition: (1) that the ground or grounds upon which the prisoner is seeking relief are "later arising" grounds, that is grounds that

arose after the point in time when the applicable statute of limitations normally would have started to run; [and] (2) that, based on the facts of the case, the strict application of the statute of limitations would effectively deny the prisoner a reasonable opportunity to present his or her claims . . . . A prisoner is not entitled to equitable tolling to pursue a patently non-meritorious ground for relief."

Id. (quoting Harris, 301 S.W.3d at 153 (Koch, J., concurring) (footnotes omitted)).

"If a petition for a writ of error coram nobis fails to show on its face either that it has been timely filed in accordance with Tennessee Code section 27-7-103 or specific facts showing why the petitioner is entitled to equitable tolling of the statute of limitations, the trial court is within its discretion to summarily dismiss it." Id. (citing Harris, 301 S.W.3d at 153) (Koch, J., concurring)). The trial court is not required to conduct an evidentiary hearing prior to dismissing a coram nobis petition if the petition "'fails to meet the necessary prerequisites for granting coram nobis relief.'" Id. (quoting Harris, 301 S.W.3d at 153) (Koch, J., concurring)). Moreover, "'[i]f the averments in the petition are insufficient to warrant relief, the petition may be dismissed' prior to any response from the state and without a hearing." Id. (quoting Harris, 301 S.W.3d at 153) (Koch, J., concurring)).

We conclude that the trial court's summary dismissal was also proper because the petition was untimely and failed to sufficiently explain why Reed was entitled to equitable tolling of the statute of limitations. See id. at *23. Here, the trial court found that Reed had failed to "allege with specificity a ground sufficient to require tolling." The court noted that Reed had alleged "fraud and concealment on the part of the District Attorney's office" but had "fail[ed] to provide any specificity or details as to how and by whom this fraud and concealment was carried out" and had failed to "identify[] any person who claims to have personal knowledge of such fraud and concealment." We note that "[w]hether due process considerations require tolling of a statute of limitations is a mixed question of law and fact, which we review de novo with no presumption of correctness." Harris, 301 S.W.3d at 145 (citing Vaughn v. State, 202 S.W.3d 106, 115 (Tenn. 2006)).

Although Reed generally alleged that he was entitled to due process tolling based on fraud and concealment by the State, he never explained how the State committed this fraud and concealment and never identified any individuals who had personal knowledge of such fraud and concealment. Although this petition was filed more than seven years after his conviction, Reed does not explain why he would be entitled to equitable tolling of the one-year statute of limitations. See Nunley, --- S.W.3d ----, 2018 WL 3468745, at *22. In our view, Reed's petition fails to show with particularity that the grounds on

which he is seeking relief arose after the time when the statute of limitations normally would have begun to run or that a strict application of the statute of limitations would effectively deny him a reasonable opportunity to present his claim. See id. at *23 (citing Harris, 301 S.W.3d at 153 (Koch, J., concurring)). In reaching this decision, we recognize that "[a] prisoner is not entitled to equitable tolling to pursue a patently non-meritorious ground for relief." Id. at 21 (citing Harris, 301 S.W.3d at 153 (Koch, J., concurring)). Given the overwhelming evidence of Reed's guilt that was presented at trial, including the eyewitness testimony from the victim's daughter, we conclude that Reed's "newly discovered evidence" would not have resulted in a different judgment, had it been presented at trial. For all these reasons, we conclude that the trial court's summary denial of his request for coram nobis relief was proper.

**II. Rule 36.1 Motion.** Reed also argues that the trial court's order denying relief was not a "final order" because it failed to dismiss his motion to vacate his illegal sentences and failed to make the requisite findings under Code section 40-26-105 and Rule 36.1, thereby divesting this court of jurisdiction to hear this appeal. He also contends that the trial court failed to make any findings at all regarding his "claims and proof" against the district attorney.

Rule 36.1 allows a defendant or the State to seek the correction of an unexpired illegal sentence. See Tenn. R. Crim. P. 36.1(a)(1); State v. Brown, 479 S.W.3d 200, 211 (Tenn. 2015). For the purposes of Rule 36.1, "an illegal sentence is one that is not authorized by the applicable statutes or that directly contravenes an applicable statute." Tenn. R. Crim. P. 36.1(a)(2). To avoid summary denial of an illegal sentence claim brought under Rule 36.1, the defendant must establish a colorable claim that the sentence is illegal. Tenn. R. Crim. P. 36.1(b). For the purposes of Rule 36.1, a colorable claim is a claim "that, if taken as true and viewed in a light most favorable to the moving party, would entitle the moving party to relief under Rule 36.1." State v. Wooden, 478 S.W.3d 585, 593 (Tenn. 2015). Examples of illegal sentences are as follows:

> (1) a sentence imposed pursuant to an inapplicable statutory scheme; (2) a sentence designating a [Release Eligibility Date (RED)] where a RED is specifically prohibited by statute; (3) a sentence ordered to be served concurrently where statutorily required to be served consecutively; and (4) a sentence not authorized for the offense by any statute.

Davis v. State, 313 S.W.3d 751, 759 (Tenn. 2010) (citations omitted). The determination of whether a Rule 36.1 motion states a colorable claim is a question of law, which this court reviews de novo. Wooden, 478 S.W.3d at 589 (citing Summers v. State, 212 S.W.3d 251, 255 (Tenn. 2007)).

Initially, as to Reed's claim that the trial court failed to make the requisite findings under Code section 40-26-105 and Rule 36.1(e), we recognize that Code section 40-26-105 requires no specific findings and that Rule 36.1(b)(2) provides for the summary denial of a motion that fails to state a colorable claim for relief. We agree that "the purpose of Rule 36.1's requirement that trial courts include their findings of fact and conclusions of law in the order granting or denying a Rule 36.1 motion is to 'facilitate appellate review.'" State v. Nero Oswald Jones, No. W2017-00145-CCA-R3-CD, 2017 WL 3841371, at *2 (Tenn. Crim. App. Aug. 31, 2017) (quoting Tenn. R. Crim. P. 36.1, Advisory Comm'n Cmt). Because our review was not at all hindered by the substance of the trial court's order in this case, it is unnecessary to remand this matter to the trial court for more comprehensive findings of fact and conclusions of law. See id. We also conclude that the trial court's findings regarding the district attorney, namely that Reed "fail[ed] to provide any specificity or details as to how and by whom this fraud and concealment was carried out by the District Attorney" and that the grand jury was "an independent body" with "no connection to the District Attorney," were sufficient for the purposes of Reed's Rule 36.1 motion.

While we acknowledge that the trial court did not directly address Reed's motion to vacate his illegal sentences in its order, we nevertheless hold that the trial court implicitly denied this motion. Although Reed references Rule 36.1, he requests that his illegal sentences be vacated, not corrected. Moreover, as we previous recognized, the petition for writ of error coram nobis and the motion to vacate his illegal sentences were joined in a single filing, which the trial court summarily dismissed. Reed's only argument regarding the illegality of his sentence was limited to his allegation that the district attorney's office had concealed proof that grand jury foreperson Mary Thomas, who was appointed at the time of the return of Reed's indictment, was not properly sworn, thereby making his judgments void and his sentences illegal. In reviewing the portion of this filing pertaining to the Rule 36.1 claim, Reed does not argue that his sentences were not authorized by the applicable statutes or that his sentences directly contravened an applicable statute. See Tenn. R. Crim. P. 36.1(a)(2). Instead, he asserts that because his convictions in case number 07-05352 are void, he is entitled to relief under Rule 36.1. However, "Rule 36.1 applies to sentences and 'does not provide an avenue for seeking reversal of convictions.'" Nero Oswald Jones, 2017 WL 3841371, at *1 (quoting State v. Jimmy Wayne Wilson, No. E2013-02354-CCA-R3-CD, 2014 WL 1285622, at *2 (Tenn. Crim. App. Mar. 31, 2014)). We conclude that because Reed's claims, taken as true and viewed in the light most favorable to him, do not state a colorable claim that his sentences are illegal, he is not entitled to relief. We further conclude that to the extent Reed argues that his sentences are illegal because his convictions are void, the trial court's summary dismissal was proper.

## CONCLUSION

We conclude that the trial court's summary dismissal of the petition for writ of error coram nobis was proper because the petition was insufficient on its face, was untimely, and failed to sufficiently explain why Reed was entitled to equitable tolling. We further conclude that the trial court's summary denial of his motion to vacate illegal sentences was proper because Reed failed to state a colorable claim for relief. Accordingly, we affirm the judgment of the trial court.

_____
CAMILLE R. MCMULLEN, JUDGE